Calvin **BURKS**, James X. Hill, Roosevelt Martin, Willie Norwood, Robert Busby, Joe Scroggins, Richard Thomas, Douglas W. Thompson and James E. Williams, Darryl Hines, and all other prisoners similarly situated, Appellants,

v.

Joseph **TEASDALE**, Governor of the State of Missouri, Lawrence Graham, Individually and as Director of the Department of Social Services, State of Missouri, George Camp, Deputy Director of the Department of Social Services, State of Missouri, Edward Haynes, Director of Division of Corrections, State of Missouri, Donald Wyrick, Warden, Missouri State Penitentiary, Appellees.

No. 78–1889.

United States Court of Appeals, Eighth Circuit.

Submitted June 13, 1979.

Decided Aug. 8, 1979.

Michael J. Hoare, of Chackes & Hoare, St. Louis, Mo., for appellant; Steven Gladstone, Columbia, Mo., on brief.

William F. Arnet, Asst. Atty. Gen., Jefferson City, Mo., for appellee; John D. Ashcroft, Atty. Gen., Jefferson City, Mo., on brief.

Before LAY, ROSS and HENLEY, Circuit Judges.

HENLEY, Circuit Judge.

This is an appeal in a civil rights case from the United States District Court for the Western District of Missouri.[1] Plaintiffs are inmates of the Missouri State Penitentiary located at Jefferson City, Missouri.[2] Plaintiffs, who are represented by attorneys employed by the American Civil Liberties Union, alleged that they were confined under conditions and subjected to practices that deprived them of rights protected by the Constitution of the United States, including the eighth amendment prohibiting cruel and unusual punishments as carried forward into the fourteenth amendment and also including the fourteenth amendment itself. The defendants are the Governor of Missouri and other state officials more directly charged with the administration of the Missouri penal system, including the Penitentiary.

Plaintiffs complained that they were confined in overcrowded and unsanitary conditions, that they had inadequate medical care, that they were unlawfully subjected to the administration of behavior modifying drugs, that unqualified persons were permitted to practice medicine in the prison in connection with convict conditions, diseases and injuries, and that inmates were denied constitutionally required procedural rights

---

1. The Honorable Elmo B. Hunter, United States District Judge.

2. The Penitentiary was constructed originally about the middle of the Nineteenth Century. Two of the cell blocks that are still in use were constructed about 1865. With the passage of time additions to the Penitentiary have been made in a more or less haphazard manner. When not working or otherwise engaged, the inmates are housed in cell blocks or other facilities referred to as "housing units."

before being confined to the punitive isolation unit of the prison, referred to as the "Adjustment Center."

Federal subject matter jurisdiction is based on 28 U.S.C. § 1343(3) and (4) read in connection with 42 U.S.C. § 1983.

The defendants, who are represented by the Attorney General of Missouri and members of his staff, deny that there is any merit to the contentions of the plaintiffs.

Plaintiffs were permitted to prosecute this litigation as a class action. There were originally four separate cases that were consolidated. By agreement an order was entered setting the case for trial on September 25, 1978, severing issues, and limiting the issue to be tried to the question of whether there existed at the Penitentiary unconstitutional overcrowding and unsanitary conditions. Other issues in the case were reserved for later trial at a date to be set by the court.

The consolidated case was duly tried, and on November 3, 1978 the district court filed a 92 page unpublished opinion dealing with the issue that had been submitted to it.

The record indicates that the cells in the Penitentiary were designed for single occupancy. Newer cells in Housing Units 2 and 5 each contain 47 square feet of floor space; the cells in the old Housing Unit No. 3 that was built in 1865 each contain 65 square feet of floor space.

In recent years major crime in Missouri has increased, as it has in other parts of the country, and as a result the Penitentiary has become seriously overcrowded. When Judge Hunter tried the instant case, some of the single person cells were occupied by three people (triple-celling) and others were occupied by two people (double-celling).

In its November 3 opinion the district court held that triple-celling and to some extent double-celling was unconstitutional and had to be eliminated. However, at that time the district judge did not prescribe a specific remedy and indicated that a future hearing would be held in that connection.

Such a hearing was held, and on November 21, 1978 the district court filed another opinion directing that what the court deemed to be unconstitutional overcrowding be eliminated and setting a time table for the elimination. Jurisdiction of the case was retained.

The overcrowding of some cells was required to be eliminated by the end of 1978 or in early 1979. The defendants were given until December 31, 1980 to eliminate double-celling in Housing Units 2 and 5, and the district court found that the double-celling of inmates in the slightly larger cells in Housing Unit 3 was not unconstitutional. In coming to its conclusions the court took note of the steps that the State was taking to solve its Penitentiary problems, including a construction program on which the State had embarked.

It is from the November 21 order that the plaintiffs appeal;[3] the defendants have not cross-appealed. For reversal plaintiffs contend that the district court erred in refusing to order the end of double-celling in Housing Unit 3, and that it erred in allowing the defendants until the end of 1980 to end double-celling in Units 2 and 5. Plaintiffs complain also that they were not allowed sufficient time to prepare for the hearing as to remedy.

No useful purpose would be served by a discussion of the evidence or by a detailed restatement of the legal principles that have evolved in the field of prison litigation over about the last fifteen years. The body of decisional law dealing with the federal constitutional rights of convicts and the role of the federal courts in protecting those rights is voluminous, and the governing principles are well settled.

█ In any nonjury case, including a "§ 1983 case," the factual findings of the trial court must be accepted by an appellate court unless clearly erroneous. Fed.R. Civ.P. 52(a). Where in a case of this kind the plaintiffs seek declaratory and injunctive relief an appellate court should leave much to the good judgment and discretion

---

**3.** We have jurisdiction pursuant to 28 U.S.C. § 1292(a)(1).

of a seasoned and experienced trial judge.[4] Additionally, where a state institution like a prison or a mental hospital is concerned, a federal court does well to move with moderation so as to give the State an opportunity to solve independently the federal constitutional problems involved. *See Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976); *Welsch v. Likins*, 550 F.2d 1122, 1128–29 and 1131–32 (8th Cir. 1977), and cases cited including the several opinions arising out of the protracted litigation involving the Arkansas penal system. Moreover, while the federal courts have long since abandoned the "hands off" policy that they followed for many years in matters of prison administration, still, prison officials must be given necessary leeway in the management and operation of the institutions in their charge. *Bell v. Wolfish*, —— U.S. ——, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979);[5] *Kelly v. Brewer*, 525 F.2d 394 (8th Cir. 1975).

■ We have considered the record in the case and the full opinion of the district court. We affirm primarily on the basis of that opinion mindful of the fact that jurisdiction has been retained and that progress at the Penitentiary is being made.[6]

There are, however, some observations and qualifications that we desire to make as much for the purpose of being of assistance to the district court and to the parties as for any other purpose.

1. To clear the record, we hold that the district court did not err in holding its hearing on remedy when it did rather than at some later date.

2. As indicated, the district court has retained jurisdiction of the case. That course is proper, and jurisdiction should be retained until the district court is satisfied that unconstitutionalities in the Penitentia-ry have been eliminated or until their elimination within a relatively short future period is assured. In a case like this, premature relinquishment of jurisdiction can be unwise. *Finney v. Ark. Bd. of Correction*, 505 F.2d 194 (8th Cir. 1974).

3. Along the same line, the district court may deem it well to call for one or more progress reports from the prison authorities and additional hearings as to the progress that is being made may be necessary. In connection with such hearings, if any, the district court may deem it advisable to dispose of the issues in the case that it has left unresolved. While we do not question the wisdom of the action of the trial judge in severing the issue of overcrowding from other issues, and while we realize that the solving of that problem may cause other problems to solve themselves to some extent, we do not in general approve of piecemeal decisions in litigation that may result in piecemeal appeals.

4. As earlier decisions of this and other courts have made clear, if the State of Missouri is going to continue to operate the Penitentiary at Jefferson City, that institution is going to have to be brought up to constitutional standards. That fact must be recognized not only by the executive branch of the government of the State of Missouri but by the legislative branch as well. The Penitentiary has been neglected far too long.

5. There are two aspects of this case that give us particular concern and to which we call the specific attention of the district court:

(a) We question whether the defendants really need until the end of 1980 to end double-celling in Housing Units 2 and 5 and suggest that as circumstances may indicate the likelihood of expedition the district

---

4. Judge Hunter has been on the federal bench since August, 1965, and before that he was a Missouri state judge for more than twelve years.

5. The federal institution involved in *Wolfish* was quite different from the Missouri State Penitentiary, and conditions of confinement in the federal institution are quite different from conditions of confinement in the institution with which we are concerned.

6. We were advised in the course of the argument that the requirements that the district court directed to be carried into effect by late 1978 and early 1979 have been met. That progress in relieving overcrowding is quite substantial.

court is authorized to reexamine the time schedule and to make such other and further orders in that regard as may be appropriate.

(b) We are concerned with the action of the district court in permitting double-celling to continue permanently or indefinitely in Housing Unit 3. We do not hold categorically that putting two men in a cell with a floor space no larger than 65 square feet either is or is not constitutionally permissible. We think that a good deal may depend on the type of institution involved, the nature of the inmates, and the nature of the confinement itself. *Cf. Bell v. Wolfish, supra.* But, we think that it must be recognized that putting two men in such a small cell and keeping them there for long periods of time can produce intolerable tensions and will almost inevitably cause trouble not only to the inmates but also to prison personnel. As stated, the district court has retained jurisdiction of the case; we think that the district judge should keep a close watch on the situation in Housing Unit 3, and we think that whether constitutionally required or not, double-celling in that unit ought to be eliminated when practicable.

Subject to the observations, requirements and possible caveats that have been stated, we affirm the judgment of the district court.