James **LYONS**, Plaintiff, Appellant,

v.

Ronald **POWELL**, et al.,
Defendants, Appellees.

No. 87–1177.

United States Court of Appeals,
First Circuit.

Submitted Oct. 9, 1987.

Decided Feb. 4, 1988.

James Lyons, pro se.

Emily Gray Rice, Asst. Atty. Gen., and Stephen E. Merrill, Atty. Gen., Concord, N.H., on brief, for defendants, appellees.

Before CAMPBELL, Chief Judge,
COFFIN and BREYER, Circuit Judges.

PER CURIAM.

James Lyons, who appears *pro se*, appeals from the district court's dismissal of his complaint for failure to state a cause of action, and from its denial of Lyons's motion for appointment of counsel. Upon motion of appellant, we have consolidated those appeals with Lyons's appeal from the district court's denial of his motion for relief from judgment pursuant to Fed.R. Civ.P. 60(b).

The appellant filed an initial and an amended complaint, both of which were referred to a magistrate and dismissed for a failure to state a cause of action, as set forth in the magistrate's report and recommendation dated August 20, 1986 and his further report and recommendation dated November 18, 1986. The recommendations of the magistrate were approved by the district court and became orders of that court.

Appellant filed objections [1] to the magistrate's reports, as required by *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir.1980).

The appellant's complaints alleged civil rights violations under 42 U.S.C. § 1983, stemming from certain aspects of his confinement as a federal pretrial detainee at New Hampshire State Prison (NHSP). The district court found that these alleged violations fell into two categories: (1) cruel and unusual punishment arising from the conditions of appellant's confinement; and (2) inadequate access to the courts.

The district court measured appellant's complaints regarding the conditions of his pretrial confinement against the "cruel and unusual punishment" standard of the Eighth Amendment. This is an incorrect standard by which to evaluate the confinement of a *pretrial* detainee. In *Ingraham v. Wright*, 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977), the Supreme Court held that:

the state does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law. Where the state seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment.

*Id.* at 671–672 n. 40, 97 S.Ct. at 1413 n. 40 (1977).

The Supreme Court articulated the constitutional standards governing due process rights of pretrial detainees in *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). In *Bell*, the Court held that:

[i]n evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, we think that the proper inquiry is whether those conditions amount to punishment of the detainee.

*Id.* at 535, 99 S.Ct. at 1872. In defining punishment, the Court noted that certain disabilities, such as restriction of movement and loss of freedom of choice and privacy, were natural by-products of the detention process, and should not be considered "punishment" in the constitutional sense. *Id.* at 537, 99 S.Ct. at 1873. The Court relied on its earlier decision in *Kennedy v. Mendoza–Martinez*, 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963) to define the factors that determine whether conditions of pretrial detention amount to punishment. In essence,

[a] court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose. (citation omitted). Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on "whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]."

*Bell v. Wolfish*, 441 U.S. at 538, 99 S.Ct. at 1873–1874 (quoting *Kennedy v. Mendoza–Martinez, supra*, at 168–169, 83 S.Ct. at 567–568). If a restriction appears to be unrelated to a legitimate governmental objective, and is, for example, arbitrary or purposeless, then a court may infer that it is intended to be punishment. *Bell v. Wolfish*, 441 U.S. at 539, 99 S.Ct. at 1874. Legitimate governmental interests include ensuring the detainee's appearance at trial, as well as maintaining security and order at the prison facility. *Id.* at 540, 99 S.Ct. at

---

1. Appellant's motion to file objections late as to the first report was granted by the district court. His objections to the second report were treated as moot, judgment having been entered prior to the court's receipt of those objections. For purposes of this appeal, we treat all objections as timely, acknowledging that appellant's receipt of the magistrate's report, and therefore his objec-

tions, apparently was delayed due to appellant's incarceration. Appellant wrote a letter to the clerk of the district court on January 10, 1987, advising the court that he had received no notice of the magistrate's November 18 report. Appellant stated in the letter that he had just learned of the district court's entry of judgment dated January 15, 1987.

1874. Thus, whether appellant's initial or amended complaints stated a viable cause of action under 42 U.S.C. § 1983 must be evaluated in light of whether the alleged conditions of his confinement at New Hampshire State Prison (NHSP) constituted punishment, or in fact served some legitimate governmental interest. For purposes of reviewing the propriety of the district court's dismissal of appellant's complaints, we treat the allegations contained therein as true. *See O'Connor v. Yezukevicz,* 589 F.2d 16 (1st Cir.1978).

We need not reiterate all of the allegations raised in appellant's complaint,[2] but instead note that we are most troubled by his contention that he was confined to a cell for 27 days with another inmate, during which time he was forced to sleep on a mattress on the floor of the cell. He claims that the mattress nearly covered the floor of the cell, and placed appellant in a position which was in close proximity to the open toilet in the cell. Although appellant did not provide measurements of the cell in his complaint or affidavits, this description leaves us with the impression that it was quite a small area. In view of the apparently small area of confinement, we are further troubled by appellant's contention that he was confined to his cell for 22–23 hours per day for a 27–day period. Appellant's total confinement was slightly less than 60 days.

The Supreme Court has held that "double-bunking," that is, placing two inmates in a cell presumably intended for a single inmate, does not constitute punishment. This practice, then, does not constitute a *per se* violation of a pretrial detainee's due process rights. *Bell v. Wolfish, supra,* 441 U.S. at 541, 99 S.Ct. at 1875. The Court left open the possibility, however, that "confining a given number of people in a given amount of space in such a manner as to cause them to endure genuine privations and hardship over an extended period of time might raise serious questions under the Due Process Clause as to whether those conditions amounted to punish-

ment...." *Id.* at 542, 99 S.Ct. at 1875–1876.

In *Lareau v. Manson,* 651 F.2d 96 (2d Cir.1981), the Second Circuit held that double-bunking of pretrial detainees was constitutionally permissible for a period of no more than 15 days, but that the use of floor mattresses constituted punishment "without regard to the number of days for which a prisoner is so confined." *Id.* at 105. This sentiment was echoed by the Third Circuit in *Union County Jail Inmates v. Di Buono,* 713 F.2d 984 (3d Cir. 1983), *cert. denied,* 465 U.S. 1102, 104 S.Ct. 1600, 80 L.Ed.2d 130 (1984). The court recognized that overcrowded prison conditions did not justify forcing pretrial detainees to sleep on floor mattresses for more than a few days. *Id.* at 994. The court noted that "the only condition not meeting constitutional standards [ ] was the practice of placing a mattress on the floor for the second occupant of a cell designed for but one inmate." *Id.* The clear implication of the court's language was that double-bunking and use of floor mattresses would only be constitutionally permissible if they were used in exigent circumstances for extremely brief periods of time. With respect to the use of floor mattresses in prisons, *see also Anela v. City of Wildwood,* 790 F.2d 1063 (3d Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 434, 93 L.Ed.2d 384 (absence of mattresses unconstitutional in light of *Lareau* and *Union County, supra,* finding floor mattresses unconstitutional for pretrial detainees); *Inmates of Allegheny County Jail v. Wecht,* 565 F.Supp. 1278 (W.D.Pa.1983), *aff'd. in rel. part,* 754 F.2d 120 (3d Cir.1985) (totality of conditions at prison resulting from overcrowding, including use of floor mattresses, rose to level of constitutional violation for both pretrial detainees and inmates). *Contra Hamm v. De Kalb County,* 774 F.2d 1567 (11th Cir. 1985) (no punishment for detainee to sleep on floor or table temporarily so long as not required arbitrarily).

---

**2.** Appellant included lengthy affidavits with his complaints which we treat as having been incor- porated by reference into the complaints.

■ According to appellant's affidavit, he was relegated to a mattress on the floor of a cell shared with another inmate for 27 days. We are persuaded by the rulings of our sister circuits that subjecting pretrial detainees to the use of a floor mattress for anything other than brief emergency circumstances may constitute an impermissible imposition of punishment, thereby violating the due process rights of such detainees. Naturally, whether the use of floor mattresses amounts to punishment must be viewed in light of whether such a practice causes the detainee "to endure genuine privations and hardship ...," *Bell v. Wolfish, supra,* 441 U.S. at 542, 99 S.Ct. at 1876, and whether it serves to accomplish a legitimate governmental objective, *id.* at 539, 99 S.Ct. at 1874.

■ At this juncture, we note that there may also be some merit to appellant's claim that his constitutional rights were violated by his confinement to his cell for 22–23 hours per day during a 27–day period. In *Bell v. Wolfish, supra,* the court found it acceptable to lodge two pretrial detainees in 75 square feet of space containing a double bunkbed where they were confined to this area for only 6 or 7 hours per day and had total confinements of generally less than 60 days. Other cases have found lengthier per diem and total confinements in similar or smaller areas to be unconstitutional. *E.g., Campbell v. Cauthron,* 623 F.2d 503 (8th Cir.1980) (unconstitutional where up to eight pretrial detainees held in approximately 130 square feet for 24 hours per day with release three times weekly for 15 to 30 minute period); *Burks v. Teasdale,* 603 F.2d 59 (8th Cir.1979) (two inmates confined in cell of 65 square feet may be unconstitutional depending on other conditions of confinement such as duration); *Battle v. Anderson,* 564 F.2d 388 (10th Cir.1977) (each resident of cell should have minimum of 60 square feet sleeping space). Thus, based on appellant's description of his surroundings and his allegation of brief and infrequent releases from his cell, it is possible that these conditions of his con-

finement, if proven, may have established a violation of his due process rights. We do note that the constitutional requirements of confinement may be less stringent in the case of a short-term confinement than in one of longer duration. *Hutto v. Finney,* 437 U.S. 678, 686, 98 S.Ct. 2565, 2571, 57 L.Ed.2d 522 (1978).

Based on the foregoing considerations, we conclude that the district court incorrectly dismissed appellant's complaint for failure to state a cause of action. Construing the *pro se* complaint liberally, *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), a court should only dismiss a complaint for failure to state a claim if "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). We believe that the appellant alleged facts which, if proved, may indeed entitle him to relief.[3] We, of course, are not ruling at this time that plaintiff is entitled to prevail on the merits; we hold only that plaintiff is entitled to proceed further with his complaint.

The appellant requested both injunctive relief and monetary damages. Since appellant has indicated that he is no longer being held at NHSP, we conclude that the issue of injunctive relief may be moot. As to the issue of monetary damages, there is substantial authority to indicate that the defendants may be entitled to qualified immunity from liability if appellant were to establish that a violation of his constitutional rights occurred. *E.g., Procunier v. Navarette,* 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978). Based on the record before us, we are unable to draw any conclusions regarding the entitlement of the defendants to the protection of an immunity defense, and leave this threshold determination to the district court.

■ With respect to appellant's claim that he was denied access to the courts in violation of his constitutional rights, we affirm the district court's conclusion that appellant's rights were not so violated. In

---

**3.** It is irrelevant that the relief requested may in fact be inappropriate. *E.g., Holt Civic Club v.*

*City of Tuscaloosa,* 439 U.S. 60, 99 S.Ct. 383, 58 L.Ed.2d 292 (1978).

**32**

*Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), the Court held that the constitutional right of access to the courts "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries *or* adequate assistance from persons trained in the law." *Id.* at 828, 97 S.Ct. at 1498 (emphasis added). We do not find appellant's complaints about the adequacy of the available library to rise to the level of a constitutional violation. Moreover, appellant, by his own admission, was given periodic access to the library. Having been given access to the library, appellant was not constitutionally entitled to assistance from "persons trained in the law" as well.

Appellant also appeals from the district court's denial of his request for appointment of counsel in his § 1983 complaint. In light of our decision to remand this case to the district court, we reserve our judgment on the propriety of the court's decision on this point. We note, however, that an indigent civil litigant must demonstrate exceptional circumstances in his case in order to justify the appointment of counsel. *Cookish v. Cunningham,* 787 F.2d 1, 2 (1st Cir.1986).

We have reviewed the remaining issues raised by appellant and find them to be undeserving of further consideration.

For the foregoing reasons the judgment of the district court is vacated. We remand this case to the district court for further proceedings consistent with this opinion.