915 F.2d 1556
 Unpublished Disposition
NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
James Allen BRYER, III, Plaintiff, Appellant,
v.
James E. CREATI, ET AL., Defendants, Appellees.
 No. 89-1520.
 United States Court of Appeals, First Circuit.
 Aug. 31, 1990.
 
 Appeal from the United States District Court for the District of Massachusetts Edward F. Harrington, District Judge.
 Edward J. Crowell on brief, for appellant.
 Timothy M. Burke, Mark Newman and Brian Rogal on brief, for appellees.
 D.Mass.,
 AFFIRMED.
 Before TORRUELLA, SELYA and CYR, Circuit Judges.
 PER CURIAM.
 
 
 1
 This is an appeal from an action under 42 U.S.C. Sec. 1983 against certain state police officers which sought damages to redress alleged punitive measures inflicted during a post-arrest detention. The district court directed a verdict in the defendants' favor and imposed monetary sanctions against the plaintiff. Bryer v. Creati, Memorandum and Order, No. 83-2246-H (D.Mass. Apr. 24, 1989). Upon consideration of the record and the issues and arguments raised by the parties, we conclude that this appeal is appropriate for summary disposition under Local Rule 27.1.
 
 
 2
 * The basic facts as found by the district court are essentially undisputed. James Allen Bryer was arrested early in the morning of November 30, 1979 by Massachusetts State Police Officer James Creati and charged with driving under the influence of alcohol, driving an unregistered and uninsured vehicle, and failing to keep within marked lanes. The window to the holding cell which Bryer occupied was left open for as long as four hours while the outside temperature was as low as 24 degrees Fahrenheit. While confined, Bryer was unruly, uncooperative, and out of control. State Trooper Thomas Charbonnier was the desk officer in charge, and a decision was made to take Bryer to a hospital for psychiatric evaluation. Charbonnier and another state trooper, David Rea, entered the cell to effect the transfer and, while attempting to restrain Bryer, Trooper Rea forcefully placed his knee on Bryer's chest. An examination at the hospital emergency room by two attending physicians found Bryer to be in good health and without injury.
 
 
 3
 Bryer, who has appeared in forma pauperis throughout, filed this complaint in 1983. He successfully moved for appointment of counsel and in 1984 the defendants' motions to dismiss were denied. Discovery ensued and in 1986 a summary jury trial was held which returned a non-binding verdict in favor of all three defendants. In 1987 appointed counsel were allowed to withdraw. In 1988 the case was transferred to another district judge and, with Bryer acting pro se, a jury trial commenced in April 1989.
 
 
 4
 At trial Bryer attempted to show that the defendants had deliberately subjected him to freezing conditions, undue physical force, and emotional distress during his post-arrest detainment. Bryer had previously been arrested by Creati on similar charges, but was found not guilty. Under Bryer's scenario, the defendants had perjured themselves and, in concert, were out to get him: they refused to close the window to his cell unreasonably subjecting him to sub-freezing temperatures, and when Bryer objected, the defendants filed additional charges against him for allegedly threatening to kill a police officer, intimidating a witness, and damaging the holding cell. Bryer was found innocent of these latter charges, but was subsequently convicted on the November 1979 charges of driving under the influence of alcohol and failing to keep within marked lanes.
 
 
 5
 In response to the defendants' motion for a directed verdict at the close of plaintiff's case on day two of trial, the district judge ruled that he was taking the case away from the jury because, viewing the evidence and its reasonable inferences in a light most favorable to the plaintiff, only one conclusion was possible: no more than isolated incidents of uncomfortable conditions of confinement had been shown; the constitutional line had not been crossed. The court characterized the case as frivolous and stated that it was considering imposing Rule 11 sanctions against the plaintiff. Each defense attorney was then asked to give a reasonable account of the fees incurred in defending the case over the years. The attorneys expressed a preference to provide that information by way of motion and affidavit, but indicated that forty to sixty thousand dollars was a rough estimate. The following day the defendants filed a motion for attorney fees along with a supporting affidavit.
 
 
 6
 Four days later the court entered a final order. It correctly relied on Bell v. Wolfish, 441 U.S. 520, 535-40 (1979), in concluding that Bryer's claims arose from the Due Process Clause of the Fourteenth Amendment which proscribes the imposition of punishment upon a pre-trial detainee, and that restrictions undertaken by officials to further legitimate governmental functions, such as maintaining custody, security, internal order, and discipline, do not amount to punishment. Id., at 539; Lyons v. Powell, 838 F.2d 28, 29 (1st Cir.1988). Memorandum and Order at 3. As said in Bell at 539: "if a restriction or condition is not reasonably related to a legitimate goal--if it is arbitrary or purposeless--a court permissably may infer that the purpose of the governmental action is punishment."
 
 
 7
 The district court viewed the evidence and its reasonable inferences in Bryer's favor, as it must in determining whether to grant a directed verdict against him. Wagenmann v. Adams, 829 F.2d 196, 200 (1st Cir.1987). The court found that the offending window was left open for a short period of time and that while the open window created less than desirable conditions it may have been left open because Bryer was drunk. The court also found that Officer Rea had not used unnecessary force to restrain Bryer in order to bring him in for medical treatment and, in any event, the force utilized was an isolated incident. No injury resulted and no evidence showed it was applied maliciously or sadistically. Memorandum and Order at 5-6. The court concluded essentially that the officers' actions were related to a legitimate government objective: the internal management of state law enforcement. Id., at 6. As a corollary, the court found no evidence to support Bryer's allegation that the defendants had conspired to punish him during his detention.
 
 
 8
 On the sanction question the court, on its own initiative, found Bryer in violation of Rule 11 of the Federal Rules of Civil Procedure. It stated:
 
 
 9
 The claim in this case was entirely frivolous. Plaintiff used Sec. 1983 as an instrument of retaliation against the defendants who carried out their duties to enforce the law in the face of a drunken, boisterous, unruly, obscene and obstreperous arrestee. The Plaintiff's manner was calculated to goad the police officers into attacking him. Their restraint was exemplary. The plaintiff had threatened to keep the defendants in court for ten years and he almost succeeded. * * * (S)anctions are in the amount of $3,000.00, $1,000.00 to be paid to each of the defendants. The conduct of the defendant warrants a more severe penalty, but his financial condition prevents a greater amount being imposed.
 
 
 10
 Memorandum and Order, at 6-7.
 
 II
 Due Process Claim
 
 11
 We may disturb the factual findings of the district court only if they are clearly erroneous, i.e., we must be left with a definite and firm conviction that a mistake has been committed. Doe v. Gaughan, 808 F.2d 871, 877 (1st Cir.1986). With respect to the grant of a directed verdict, we, like the court below, view the evidence in Bryer's favor and give him the benefit of all reasonable inferences, without regard to credibility, conflicting testimony, or the weight of the evidence. Joia v. Jo-Ja Service Corp., 817 F.2d 908, 911 (1st Cir.1987). A directed verdict should be granted only when, so viewed, reasonable persons could reach but one conclusion. Id., at 910; see also, Wagenmann v. Adams, 829 F.2d at 200.
 
 
 12
 Our review of the record does not indicate that a mistake was made on either account. The appellees contend that because the record is insufficient in that it does not contain a transcript of day one of the trial, when plaintiff testified, we must accept the trial court's factual determinations. Only the transcript of day two is before us; it includes the testimony of the three defendants, two EMTs who assisted in transporting Bryer to the hospital, and one of the examining physicians. Ordinarily, a failure to produce relevant testimony precludes our review of related claims. Vazquez v. Borrero, 636 F.2d 4, 5 (1st Cir.1980). We note that the appellant does not seriously challenge the court's findings regarding the conditions in his cell during the post-arrest detention. Despite the absence of a portion of the transcript, we have carefully reviewed the record as it stands, Valedon Martinez v. Hospital Presbiteriano, 806 F.2d 1128, 1135 (1st Cir.1986), and also consider the appellant's version of events made in arguments to the district court and in his brief here. See 9 Moore's Federal Practice, p 210.05, n. 4 (2d ed., 1989). So taken, the district court's findings are altogether permissible.
 
 
 13
 It is clear that between arrest and trial a detainee may not be "punished" without due process of law. Bell v. Wolfish, 441 U.S. 520, 535-40 (1979); see also Graham v. Connor, --- U.S. ----, ----, 109 S.Ct. 1865, 1871 n. 10 (1989). But allegations of a jailor's lack of due care, or mere negligence, are outside the scope of the due process clause. Daniels v. Williams, 474 U.S. 327, 333-34 (1986). Bell implicates the right to be free of punishment during pretrial detention. Understandably, while such a detainee may wish for more comfort and less restraint, the right to be free of discomfort "simply does not rise to the level of [a] fundamental liberty interest". Bell, 441 U.S. at 534. Likewise, unless officers such as those here are shown to have intentionally inflicted harm, id., at 538-39 & n. 20, a particular restriction or condition which bears a reasonable relationship to legitimate government objectives in operating a detention facility does not amount to "punishment", id., under the substantive right protected by the due process clause. Graham v. Connor, 109 S.Ct. at 1871. We note that the Supreme Court has not resolved whether the Fourth Amendment standard of objective reasonableness applicable to allegations of deliberate use of excessive force at the time of arrest--a standard which regards the surrounding facts and circumstances and not an officer's underlying intent or motivation--, Id., at 1872, applies to pretrial detention. Id., at 1871, n. 10. Without deciding the issue, we would observe that a similar approach may be suitable for application to claims of pre-conviction excess force. See Titran v. Ackman, 893 F.2d 145, 146-48, (7th Cir.1990).
 
 
 14
 In determining whether the conditions Bryer endured were "punishment", we apply the traditional balancing test and weigh his liberty interest against the state's relevant interests. Youngberg v. Romeo, 457 U.S. 307, 320 (1982). We conclude that Bryer comes up far short of having shown any genuine privation or hardship, Lyons v. Powell, 838 F.2d at 31, or that the officers intended to inflict physical punishment. Not only did the alleged deprivation take place over a relatively short period of time, but the officer's actions in restraining Bryer in order to provide medical attention, in light of Bryer's admissions that his conduct during the detention was less that exemplary, were surely, under the circumstances recounted by Bryer in this record, in his best interests. We agree with the district court that the nature and duration of Bryer's confinement was reasonably related to the officers' interest in the need for public safety and the management of the detention facility at the time. See Santana v. Collazo, 714 F.2d 1172, 1180 (1st Cir.1983); cf. Graham v. Connor, 109 S.Ct. at 1872. There was no error in allowing a directed verdict against the appellant.
 
 III
 
 15
 The sanctions question gives us somewhat more pause. The appellant first contends that the district court failed to make specific findings as required by Fed.R.Civ.P. 11. Second, a cursory argument is made that the imposition of sanctions did not comport with due process in that notice and an opportunity to be heard were lacking. The appellees characterize the $3,000 sanction as a token $1,000 fee award to each defendant which, they contend, was totally justified by years of litigation which was ultimately found to be premised upon insubstantial facts and motivated by an improper purpose.
 
 
 16
 It is clear that an appellate court must apply an abuse of discretion standard in reviewing all aspects of a district court's Rule 11 determination. Cooter & Gell v. Hartmarx Corp, 110 S.Ct. 2447, 2461 (1990). In reviewing under this deferential standard, we give appropriate weight to the district court's greater familiarity with the case. Anderson v. Beatrice Foods Co., 900 F.2d 388, 393-94 (1st Cir.1990). We have held that a district court need not make findings and give explanations every time sanctions are imposed under Rule 11, but that in aid of appellate review, "we do require a statement when the reason for the decision is not obvious from the record." Figueroa-Ruiz v. Alegria, 905 F.2d 545, 949 (1st Cir.1990). Here, the reason for the sanction decision is readily discernible from the extensive record. We conclude that the district court's primary reason for imposing sanctions was premised upon its conclusion that Bryer had failed to make reasonable inquiry as to whether his claim was well founded in fact before commencing and continuing litigation. As a subsidiary finding, the court concluded that Bryer's course of conduct evidenced an improper purpose, i.e., retaliation. Whether either clause of Rule 11 has been violated is determined by "an objective standard of reasonableness under the circumstances." Lancellotti v. Fay, 909 F.2d 15, ---- (1st Cir.1990); Kale v. Combined Ins. Co., 861 F.2d 746, 757 (1st Cir.1988). And Rule 11 by its terms applies to parties, whether or not they proceed pro se. The rule does not contemplate elaborate procedural requirements and does not require a hearing in every case. Muthig v. Brant Point Nantucket, Inc., 838 F.2d 600, 606-07 (1st Cir.1988); United States v. Nesglo Inc., 744 F.2d 887, 890-91 (1st Cir.1984). What is required is notice and an opportunity to present opposing argument. Id. The district court notified Bryer that it intended to impose Rule 11 sanctions. The court invited submissions from the defendants on the amount of fees. Five days later sanctions were imposed. While the court did not expressly order Bryer to show cause why sanctions should not enter, the record discloses that Bryer did not hesitate on other occasions to present his position. Bryer did not move to reconsider or amend the sanction portion of the final order, nor did he expressly ask for a hearing or other opportunity to oppose the sanction. At bottom, this is not a case like In Re Richardson, 793 F.2d 37 (1st Cir.1986), where an underlying factual dispute underscored the desirability of a hearing. Id. at 40. As a practical matter, Bryer's only possible rebuttal would have been to attempt to demonstrate that the district court had overlooked controlling law or had misread the record. See Braley v. Campbell, 832 F.2d 1504, 1514 (10th Cir.1987). Bryer had already unsuccessfully attempted to do this in opposing the defendant's motion for a directed verdict. While it might have been preferable for the district court to invite submissions from both sides, it is also clear that Bryer had an opportunity to respond and did not choose to pursue it.
 
 
 17
 The district court tempered what we construe to be a token fee award in light of Bryer's ability to pay. Oliveri v. Thompson, 803 F.2d 1265, 1279 (2nd Cir.1986). We cannot say that the record reveals any meaningful error of judgement on the part of the district court. Maine Audubon Society v. Purslow, No. 90-1057, slip op. at 9 (1st Cir. Jul. 6, 1990). There was no abuse of discretion in its conclusion that Bryer had not acted in an objectively reasonable manner in pursuing this litigation or in its determination that an aggregate sum of $3000 was an 'approriate' sanction.
 
 
 18
 Affirmed.