Kenyon v. Cheshire County          CV-92-369-M    03/31/95
                UNITED STATES DISTRICT COURT FOR THE
                      DISTRICT OF NEW HAMPSHIRE


<u>John Raymond Kenyon</u>,
      Plaintiff,

            v.                                  Civil No. 92-369-M

<u>Cheshire County House of Corrections</u>,
<u>Cheshire County Jail Administrator</u>,
<u>Cheshire County Jail Superintendent</u>,
<u>Cheshire County Board of Commissioners, and</u>
<u>Cheshire County Jail Assistant Superintendent</u>,
      Defendants.


                          O R D E R


      Plaintiff, John Raymond Kenyon, brings this action under

42 U.S.C. § 1983 asserting that while a pre-trial detainee at the

Cheshire County House of Corrections he was unlawfully denied

substantive and procedural due process of law and equal

protection under the law.  The court necessarily reads

plaintiff's complaint and other pleadings with an extra degree of

solicitude in light of his <u>pro</u> <u>se</u> status.  <u>Estelle v. Gamble</u>, 429

U.S. 97, 106 (1976).  For the reasons set forth below,

defendants' Motion for Summary Judgment (document no. 26) is

granted, and plaintiff's Motion for Summary Judgment (document

no. 27) is denied.

## I. Background

On April 25, 1992, plaintiff was incarcerated as a pre-trial detainee in the Cheshire County House of Corrections ("Cheshire County"). Cheshire County's visitation policy during that time prohibited visits by former inmates or detainees unless a prior written request was first submitted and approved by the Department of Corrections Supervisor or Superintendent. See Cheshire County Department of Corrections Visitation Rules at F-38.

On September 2, 1992, plaintiff submitted such a written request, asking that he be allowed "standard visitation" on Saturdays with his then fiancee, Charlene Kovacs ("Kovacs"). Kovacs had been a Cheshire County inmate; she served a state sentence on weekends between May 1991 and June 1992. In February of 1993, four months after plaintiff submitted his visitation request, the Acting Corrections Superintendent denied it.

Denial was based on several ostensible security concerns giving rise to the policy itself. Defendant's Summary Judgment Motion at p. 2. The policy was essentially based on the following security concerns: 1) former inmates/detainees have a

2

working knowledge of the House of Corrections' schedule, procedures, and layout of the physical plant, which, taken together, might be used to facilitate an escape by current inmates or detainees; 2) former inmates or detainees might use the visitation privilege to seek retribution against correctional officers, County property or currently incarcerated inmates with whom they had come into contact during their previous confinement; and 3) recently released inmates might seek to intimidate, or might be exposed to intimidation by current inmates, and they might be more likely to attempt to introduce contraband into the facility or provide inmates with implements necessary for an escape.  Id. at p. 3.

Plaintiff's complaint is based on the general claim that he was unlawfully punished when denied visitation with his fiancee, because his fiancee did not pose a threat to institutional security, and because other pre-trial detainees were allowed visits from former inmates.  Plaintiff's Memorandum of Law in Support of Motion for Summary Judgment at p. 3.

Defendants have been sued in both their individual and official capacities.  They have moved for summary judgment,

3

arguing that plaintiff has failed to describe any violation of the Constitution, and, alternatively, that each defendant is entitled to summary judgment in their individual capacities based on qualified immunity. Defendants also argue that Cheshire County is entitled to summary judgment in that it is not subject to suit under 42 U.S.C. § 1983. Plaintiff objects to the motion for summary judgment and has filed his own cross-motion for summary judgment.

## II.   STANDARD OF REVIEW

Summary judgment is proper "if pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact "is one `that might affect the outcome of the suit under the governing law.'" United States v. One Parcel of Real Property, 960 F.2d 200, 204 (1st Cir. 1992) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party has the burden of demonstrating the absence of a genuine issue of material fact for trial. Anderson, 477 U.S. at 256. The party opposing the motion must set forth specific facts showing that

4

there remains a genuine issue for trial, demonstrating "some factual disagreement sufficient to deflect brevis disposition." Mesnick v. General Electric Co., 950 F.2d 816, 822 (1st Cir. 1991), cert. denied, 112 S.Ct. 2965 (1992). This burden is discharged only if the cited disagreement relates to a genuine issue of material fact. Wynne v. Tufts University School of Medicine, 976 F.2d 791, 794 (1st Cir. 1992).

## III. Plaintiff's § 1983 Claim

### A. Legal Standard

In order to prevail on an action under § 1983 plaintiff must show "the existence of a federal constitutional or statutory right, and some deprivation of that right as a result of defendants' actions under color of state law." Watterson. v. Page, 987 F.2d 1, 7 ( 1st Cir. 1993) (citing Willhauk v. Halpin, 953 F.2d 689, 703 (1st Cir. 1991)). The defendants concede that they acted under color of state law, so the only remaining question is whether plaintiff was deprived of a constitutional right when his visitation request was denied.

### B. Cheshire County House of Corrections

A department of municipal government is not a separate entity from the municipality itself for the purposes of § 1983. Stump v. Gates, 777 F. Supp. 808, 815 (D. Colo. 1991), aff'd 986 F.2d 1429 (10th Cir. 1993) (county coroner's office not independent legal entity for purpose of § 1983 claim); Curran v. Boston, 777 F. Supp. 116, 120 (D. Mass. 1991); Reese v. Chicago Police Dep't, 602 F. Supp. 441, 443 (N.D. Ill. 1984) (County Attorney's Office is not separate suable entity). Plaintiff has named the House of Corrections, a municipal department, as a defendant. However, any recovery would be obtained from Cheshire County, not the House of Corrections, thus, the county and not the correctional facility is the proper defendant. Summary Judgment is granted as to Cheshire County House of Corrections, but the court will construe plaintiff's complaint as having properly named Cheshire County as a defendant.

A municipality may be held liable as a "person" under § 1983. Monell v. Department of Social Servs., 436 U.S. 658, 690 (1978). Liability, however, may not be founded solely on a theory of respondeat superior. Id. at 694. Plaintiff must show that an official policy or custom caused a Cheshire County employee to violate plaintiff's constitutional rights. Id. "The

6

[county] cannot be held liable under § 1983 unless [plaintiff] prove[s] the existence of an unconstitutional municipal policy." St. Louis v. Praprotnik, 485 U.S.112, 128 (1988).

Plaintiff has failed to allege the existence of an unconstitutional municipal practice, custom or policy. Plaintiff correctly describes the County's Visitation Policy as one that allows former inmates or detainees to visit, upon approval by the Department of Corrections Supervisor or Superintendent of a written request for such a visit.[1] Plaintiff has failed to sufficiently describe how that policy caused or might have operated to cause a Cheshire County employee to violate his constitutional rights. Monell, 436 U.S. at 690. Absent allegations that the County's visitation policy is facially unconstitutional or that application of the policy caused a violation of plaintiff's constitutional rights, summary judgment must be granted in favor of Cheshire County.

---

[1] The "Cheshire County Department of Corrections Visiting Rules," hold in pertinent part that: "No former inmate/detainee of the Cheshire County House of Corrections shall be allowed to visit without prior written request and approval from the Department of Corrections Supervisor or Superintendent."

**C.    K. Cann, J. Lane, C. Baird, D. Thompson, D. Adams, E. Smith, and P. McManus as Defendants.[2]**

Plaintiff alleges that the County's refusal to grant his request for visitation by his fiancee, a former inmate, violated his constitutional rights.  Given plaintiff's pretrial status at the time of the alleged violation, his claim is properly considered under the Fourteenth rather than under the Eighth Amendment.  See Revere v. Massachusetts Gen. Hosp., 463 U.S. 239, 245 (1983) (citing Ingraham v. Wright, 430 U.S. 651, 761-72, n. 40 (1977) ([T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law.")); see also Bell v. Wolfish, 441 U.S. 520 (1979).

Although neither the Supreme Court nor the Court of Appeals for this Circuit has yet articulated a "constitutional standard of treatment for pre-trial detainees," Georgia-Pacific v. Great Northern Nekoosa, 728 F. Supp. 807 (D.Me. 1990) (citing Revere v. Massachusetts General Hospital, 463 U.S. 239, 244), it is well settled that their constitutional rights are violated when the

---

[2]  Pursuant to Fed. R. Civ. P. 25(a)(1) the court dismisses this action as it pertains to Carl Baird.

conditions of confinement are punitive. Bell v. Wolfish, 441 U.S. 520, 535 (1979); Lyons v. Powell, 838 F.2d 28 (1st Cir. 1988). While the government may not constitutionally punish a pretrial detainee, it still may properly impose conditions and restrictions necessary to detain the person and maintain jail security. Id. at 540.

Determining whether a particular restriction amounts to unconstitutional punishment of a pretrial detainee turns on whether it is reasonably related to a legitimate governmental purpose. Id.

> Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to `punishment.' Conversely, if a restriction or condition is not reasonably related to a legitimate goal - if it is arbitrary or purposeless - a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees.

Wolfish, 441 U.S. at 539. Restraints that are reasonably related to the maintenance of jail security "do not, without more, constitute unconstitutional punishment." Id. at 540. However, even if the limitation on a pretrial detainee's freedom is

9

rationally related to a legitimate non-punitive governmental purpose, it amounts to punishment in any event if it "appear[s] excessive in relation to that purpose." <u>Young v. Keohane</u>, 809 F.Supp 1185, 1192 (M.D. Pa. 1992) (emphasis added) (quoting <u>Wolfish</u>, 441 U.S. at 561).

Defendants' argue that the visitation policy, as applied to the plaintiff, did not amount to unconstitutional punishment. Defendants' Motion for Summary Judgment at p. 12. Defendants persuasively articulate three basic concerns addressed by the policy requiring a written request and administrative approval before a former inmate will be allowed on the prison grounds to visit a current inmate. <u>Id.</u> First, defendants argue that the policy helps prevent escape attempts, which might be facilitated by former inmates familiar with existing prison regulations, schedules, and layout. Secondly, the County argues that the policy reduces the risk that former inmates might seek to exact retribution on current guards or inmates. Finally, defendants argue that the policy guards against the legitimate risk that former inmates might smuggle contraband into the facility. To be sure, application of the policy to individual requests requires

10

the exercise of judgment and discretion on the part of jail officials.

Courts should give great deference to the professional expertise of corrections officials in assessing whether a specific restriction is reasonably related to security interests, and whether a particular waiver should or should not be granted. In the "absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, the Court should defer to their expert judgment in such matters." Block v. Rutherford, 468 U.S. 576, 584-585 (1984); see also Wolfish, 441 U.S. at 547 (citing Jones v. North Carolina Prisoners' Labor Union, 433 U.S. 119, 129 (1977) ("Prison administrators therefore should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order or discipline and to maintain institutional security."))

While the pleadings cast some doubt upon the "correctness" of the discretionary decision to deny plaintiff's request under the facts alleged, and while the court may well have decided the issue differently in the first instance, the decision does not

11

appear to have been either irrational or inconsistent with the stated and legitimate security interests the policy seeks to address. For example, given the rationale behind defendants' visitation policy, one might reasonably question the gravity of the threat posed by the requested visit at least as to the risk of violence and retribution (plaintiff's fiancee presumably had little or no prior contact with male inmates and probably was not familiar with the layout and physical plant of the male housing areas), but the risk of smuggling[3] is always a real one. The "feel" of the situation in determining whether to grant an exception to policy is and should remain a matter committed to the broad discretion of professional prison authorities.

### 1. Qualified Immunity

In any event, in this case defendants are entitled to qualified immunity. Qualified immunity protects defendants "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Febus-Rodriguez v. Betancourt-Lebron, 14 F.3d 87, 91 (1st Cir. 1994). "On a motion for summary judgment, `the

---

[3] Even in "non-contact" visit situations, smuggling of contraband to persons within the institution, other than the person visited, poses a legitimate security risk.

12

relevant question is whether a reasonable official could have believed his actions were lawful in light of clearly established law and the information the official possessed at the time of his allegedly unlawful conduct.'"  Id. at 91 (quoting McBride v. Taylor, 924 F.2d 386, 389 (1st Cir. 1991)); see Anderson v. Creighton, 483 U.S. 635, 639 (1987).  The general rule of qualified immunity is that "governmental officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) demonstrating that one is entitled to the protections afforded by qualified immunity is not particularly burdensome.  Ricci v. Urso, 974 F.2d 5, 6 (1st Cir. 1992).

In this case defendants directly involved in denying the particular requested visitation would not be immune (assuming a constitutional right to this particular visit, and recognizing in any event a pretrial detainee's constitutional right not to be "punished") if on an objective basis no reasonably competent official would have concluded that the request should be denied. Defendants carry their burden on that issue.  Nothing in the

13

pleadings suggests that a reasonably competent official would have concluded that exercising discretion to deny plaintiff visitation under a policy designed to minimize return to the institution of former inmates for security reasons would violate his clearly established constitutional rights or that such a decision would constitute unlawful punishment of a pretrial detainee.

While one might question the correctness of the decision or even the substantive relevance of the risk factors giving rise to the policy to the specific facts of plaintiff's case, still, the policy does bear a rational relationship to legitimate state interests and the discretionary decision to deny visitation was facially consistent with the policy and its underlying legitimate purposes.

## IV. CONCLUSION

Because, at a minimum, under these facts the defendants would be entitled to qualified immunity, and no genuine issue of fact for trial exists, defendants are entitled to judgment as a matter of law, their motion is granted. The clerk is instructed to enter judgment in favor of all defendants.

SO ORDERED.

_____
Steven J. McAuliffe
United States District Judge

March 31, 1995

cc:  David S. Park, Esq.
     Wayne C. Beyer, Esq.
     John Raymond Kenyon