Picard v. Pennsylvania Institutional  CV-95-387-M    12/06/95

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

Warren R. Picard,
        Plaintiff,

        v.                                          Civil No. 95-387-M

Dr. Alan Stein; Sgt. Jerry Street;
Nursing Supervisor Barbara Conden;
Cpl. Alfred Lessard; Lt. Thomas Cusson;
Sgt. William Duffy; Cpl. Allen Gerard, Jr.;
Lt. Ronald Bourque; Sgt. Gary Chapdelaine;
James O'Mara, Individually; James O'Mara,
In His Official Capacity as Hillsborough
County Jail Superintendent; and Pennsylvania
Institutional Health Services, Inc.,
        Defendants.

O R D E R

Pro se plaintiff objects, in part, to the Report and

Recommendation of the Magistrate Judge (document no. 8) which

recommends dismissal of his complaint with regard to claims

brought against defendants Dr. Stein and Hillsborough County Jail

Superintendent James O'Mara (for failure to plead facts which

would support a cognizable claim against either), as well as

dismissal of his deprivation of procedural and substantive due

process claims (for failure to state a cause of action).

In his timely objection to the Report and Recommendation,

plaintiff contests only the proposed dismissal of his due process

claims and claims against Superintendent O'Mara.  Accordingly,

the court hereby adopts the Magistrate Judge's Report and

Recommendation as to dismissal of the claims brought against Dr. Stein. Those claims are hereby dismissed.

However, with regard to the recommendation that plaintiff's due process claims and claims brought against Superintendent O'Mara be dismissed, the court declines to accept that recommendation. The court finds, as discussed below, that plaintiff has, at this early stage of the proceedings, adequately asserted both procedural and substantive denial of due process claims against Superintendent O'Mara and the other correctional officer defendants, given the minimal requirements of notice pleading and his pro se status.

Substantive Due Process

The Eighth Amendment prohibits the infliction of cruel and unusual post-conviction punishment. Revere v. Massachusetts General Hospital, 463 U.S. 239, 244 (1983). At the time relevant to his complaint, plaintiff alleges that he was a pretrial detainee. The protections against cruel and unusual punishment available to pretrial detainees, under the Fourteenth Amendment, "are at least as great as the Eighth Amendment protections available to a convicted prisoner." Id. (citing Bell v. Wolfish, 441 U.S. 520, 535 (1979)). Because plaintiff claims to have been

2

a pretrial detainee, it is the due process clause of the Fourteenth Amendment that limited the conditions of his confinement.  Ingraham v. Wright, 430 U.S. 651 (1977).

Violation of a pretrial detainee's right to substantive due process occurs when the conditions of confinement "amount to punishment of the detainee."  Bell v. Wolfish, supra, 441 U.S. at 535; Lyons v. Powell, 838 F.2d 28 (1st Cir. 1988).  While the state may not punish a pretrial detainee, it can properly impose upon him conditions and restrictions necessary to maintain jail security.  Wolfish, 441 U.S. at 540.  Whether a restriction is punitive or incidental to a legitimate governmental purpose turns in large measure on "whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]."  Id., at 538.

> Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment."  Conversely, if a restriction or condition is not reasonably related to a legitimate goal - if it is arbitrary or purposeless - a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees.

3

_Id._, at 539. Restraints that are reasonably related to the maintenance of jail security "do not, without more, constitute unconstitutional punishment." _Id._, at 540. However, even if limitations on a pretrial detainee's freedom are rationally related to a legitimate non-punitive governmental purpose, they amount to punishment in any event if they "appear excessive in relation to that purpose." _Young v. Keohane_, 808 F.Supp. 1185, 1192 (M.D. Pa. 1992) (emphasis added) (quoting _Wolfish_, 441 U.S. at 561).

In addition to proving that conditions of confinement constitute unconstitutional punishment, to prevail on a claim for damages under 42 U.S.C. § 1983 a pretrial detainee must also demonstrate that the imposing officials' conduct reached the level of "deliberate indifference" to his or her conditions of confinement. _Redman v. County of San Diego_, 896 F.2d 362 (9th Cir. 1990), _en banc_, 942 F.2d 1435 (1990), _cert. denied_, 112 S.Ct. 972 (1992) (jail officials' conduct toward pretrial detainees must reach level of deliberate indifference before a § 1983 claim is stated); _Trask v. County of Strafford_, 772 F.Supp. 42, 44 (D.N.H. 1991) (allegations of negligence insufficient to support a § 1983 claim where correctional officers failed to prevent suicide of pre-trial detainee).

4

In determining whether the conditions of confinement as described by the plaintiff were unconstitutional under the Fourteenth Amendment, the court must examine the totality of conditions. Brown v. Crawford, 906 F.2d 667, 672 n. 3 (11th Cir. 1990), cert. denied, 111 S.Ct. 2056 (1991). Here plaintiff alleges that he was held in punitive segregation for seven and one-half months as a pretrial detainee. The duration of punitive or administrative segregation certainly is a consideration in determining its legitimacy, as well as the "deliberate indifference" of those persons responsible for administering the jail. Hutto v. Finney, 437 U.S. 678, 686-687 (1978) ("length of confinement cannot be ignored in deciding whether the confinement meets constitutional standards"). A five-month period of confinement in administrative segregation has been held constitutional where a pretrial detainee posed an escape risk, while, under different circumstances, a similar stay in administrative segregation has been held sufficiently questionable to warrant denial of defendant's motion for summary judgment. Compare Besselaar v. Outlaw, No. 89-0554-T-C, 1991 U.S. Dist. LEXIS 12314, at *5 (S.D. Ala. Aug. 7, 1991), with Young v. Keohane, 809 F.Supp. 1185 (N.D. Pa. 1992). "At some point . . . the administrative necessity for involuntary lockup

5

begins to pale." <u>Covino v. Vermont Department of Corrections</u>, 933 F.2d 128, 130 (2d Cir. 1991) (noting that a nine month stay in administrative segregation "smacks of punishment").

Whether a pretrial detainee has been denied substantive due process because of an extended stay in administrative (or punitive) segregation is a particularly fact-driven issue. <u>Brown-El v. Delo</u>, 969 F.2d 644, 648 (8th Cir. 1992) (record belied argument that placement of inmate into administrative segregation was related to "immediate security risk," and not punitive reasons, when detainee committed rule violations two months prior to placement in administrative segregation). <u>See also</u>, <u>Young v. Keohane</u>, <u>supra</u>, at 1192-1193 ("the presence or absence of punishment can be determined only by an extraordinarily fact-sensitive and contextual analysis").

In this case, plaintiff alleges that he was placed in segregation because he refused to submit to a particular TB test, on grounds that his medical condition rendered that test dangerous to him. Specifically, plaintiff claims that the test itself causes him to become ill and results in an adverse physical reaction. He says he offered to submit to an alternative test (x-ray), and he notified medical personnel at the jail that he had previously been advised in another

6

correctional facility to decline future TB tests.  He says he informed defendants, or some of them, of his condition and specifically requested the x-ray instead.

Plaintiff asserts that the House of Correction's nurse insisted that he submit to the standard TB test, refused to allow the x-ray, and, because he would not submit, the defendants summarily placed him in punitive segregation.  (Whether the segregation was administrative or punitive in nature is unclear, though plaintiff alleges that it was punitive segregation.)  Plaintiff further says he was held in a segregation cell for seven and one-half consecutive months, during which he was subjected to two strip searches daily, whether he left the cell or not and whether he had had contact with others or not.  He further alleges that he was subjected to excessive force — the unwarranted use of pepper spray in the confines of his cell — when he passively resisted the strip searches by refusing to voluntarily remove his clothes, even though he permitted officers to remove them for him, and even though he previously advised the officers of an asthmatic condition which allegedly made the use of pepper spray particularly dangerous to him.  He claims that the officers used the pepper spray against him nevertheless, and, on one occasion used it in an uncontrolled manner, emptying the

7

can.  He further says that the use of the pepper spray caused him physical injury.

In addition, plaintiff alleges that while housed in segregation for seven and one-half months he was rarely allowed outside recreation, visits by others, or access to legal materials, nor was he provided with any other privileges regularly afforded to "normal pretrial inmates."

Finally, plaintiff alleges that when he eventually submitted to the TB test he became ill, as predicted, and suffered an adverse physical reaction.  He further alleges that despite having finally given in and having taken the TB test, he was still held in segregation, allegedly based upon his prior refusals to cooperate in the required strip searches.

Procedural Due Process

He also alleges, expressly as well as by fair implication, that throughout his term in segregation he was never given an opportunity for any type of hearing, either pre- or post-deprivation, however informal.  He was not provided with a non-adversary review of the information supporting his administrative or punitive confinement, nor was he given an opportunity to submit any statement of his own within a reasonable time after he

8

was confined to segregation.  Fairly implied in his complaint is a claim that he was not provided with any of the process recognized to be due prior to confinement in punitive segregation.  For example, he claims not to have been supplied with advance written notice of the violation or a written statement by fact-finders as to the evidence relied upon and the reasons for the disciplinary action taken against him.  See e.g., Wolff, supra, 418 U.S. at 563.

In Sandin v. Connor, 115 S.Ct. 2293 (1995), the Supreme Court substantially altered the applicable law relative to determining the scope of an inmate's liberty interests in remaining in the general population of a correctional facility, which interests effectively define his right to procedural due process.  Stating that "the time has come to return to the due process principles we believe were correctly established and applied in Wolff and Meachum," the majority in Sandin held that states may, under certain circumstances, create liberty interests which are protected by the Due Process Clause.  "But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the due process clause of its own force, see, e.g., Vitek, 445 U.S. at 493 (transfer to

9

mental hospital), and <u>Washington</u> 494 U.S. at 221-222 (involuntary administration of psychotropic drugs), nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." <u>Sandin</u>, 115 S.Ct. at 2300. While <u>Sandin</u> appears to be limited to defining the type of liberty interest that might be protected under the Constitution relative to <u>convicted</u> inmates, it would appear that even under that reigned-in standard this plaintiff has probably sufficiently alleged a liberty interest entitling him to some form of procedural due process prior to its deprivation by state actors, and he has at least described a cause of action sufficient to warrant service and a response.

<u>Conclusion</u>

To be sure, plaintiff's complaint could be more detailed and more fact specific. However, the facts he does plead, construed liberally at this early stage, do give rise to cognizable claims for violation of his procedural and substantive due process rights under the Fourteenth Amendment.

The Magistrate Judge's Report and Recommendation is approved and accepted as to the recommendation to dismiss plaintiff's claims against Dr. Stein. The recommendation to dismiss the

10

plaintiff's procedural and substantive due process claims under the Fourteenth Amendment is not accepted, nor is the recommendation that plaintiff's claims against Superintendent O'Mara be dismissed.  Plaintiff has adequately alleged facts which give rise to cognizable claims against Mr. O'Mara in his individual capacity, as the person responsible for the administration of the correctional facility (under 42 U.S.C. § 1983).

Defendants shall answer or file an appropriate responsive pleading relative to plaintiff's substantive and procedural due process claims within thirty (30) days of the date of this order; this order and plaintiff's complaint shall also be served on Defendant O'Mara who shall file an answer or other responsive pleading within thirty (30) days of the date of this order.


SO ORDERED.


_____
Steven J. McAuliffe
United States District Judge

December 6, 1995

cc:  Warren R. Picard, pro se
     Nursing Supervisor Barbara Conden
     Pennsylvania Institutional Health Services, Inc.
     Carolyn Kirby, Esq.

11