940 F.2d 7
 Guy C. ELLIOTT, Sr., as Voluntary Administrator of the
Estate of Guy C. Elliott, Jr., Plaintiff, Appellant,
v.
CHESHIRE COUNTY, NEW HAMPSHIRE; Patrick McManus, Cheshire
County House of Corrections, Superintendent, Individually
and in his Official Capacity; Carl Baird, Cheshire County
House of Corrections, Corrections Supervisor, Individually
and in his Official Capacity; Angie Malloy, Cheshire County
House of Corrections, Corrections Officer, Individually and
in her Official Capacity; Robert Norton, Cheshire County
House of Corrections, Corrections Officer, Individually and
in his Official Capacity; Arthur Whipple, Cheshire County
House of Corrections, Corrections Officer, Individually and
in his Official Capacity; Richard Clapp, Cheshire County
House of Corrections, Corrections Officer, Individually and
in his Official Capacity; John Thornton, Cheshire County
House of Corrections, Corrections Officer, Individually and
in his Official Capacity; and M.P. Ranhoff, New Hampshire
State Police, Trooper, Individually and in his Official
Capacity, Defendants, Appellees.
 No. 91-1038.
 United States Court of Appeals,
First Circuit.
 Heard May 10, 1991.
Decided July 25, 1991.
 
 James Romeyn Davis with whom Katharine Lord Klein and Bragdon and Berkson, P.C., were on brief, Keene, N.H., for plaintiff, appellant.
 Emily Gray Rice, Sr. Asst. Atty. Gen., with whom John P. Arnold, Atty. Gen. of New Hampshire, and Charles T. Putnam, Asst. Atty. Gen., were on brief, Concord, N.H., for defendant, appellee M.P. Ranhoff, and Thomas F. Kehr with whom Craig L. Staples, were on brief, Concord, N.H., for defendants, appellees Cheshire County, Patrick McManus, Carl Baird, Angie Malloy, Robert Norton, Arthur Whipple, Richard Clapp and John Thornton.
 Before BREYER, Chief Judge, ALDRICH, Senior Circuit Judge, and TORRUELLA, Circuit Judge.
 TORRUELLA, Circuit Judge.
 
 
 1
 Guy Elliott, Jr., ("Guy") committed suicide while a pretrial detainee at the Cheshire County, New Hampshire, House of Corrections. His father, Guy Elliott, Sr., ("Elliott" or "plaintiff") brought this 42 U.S.C. Sec. 1983 action against the county, several individually named corrections officials and officers, and the arresting officer.[1] Elliott now appeals from summary judgment in favor of all defendants.
 
 
 2
 Review of summary judgment requires us to determine de novo whether there is any genuine issue as to a material fact and whether the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Petitti v. New England Tel. & Tel. Co., 909 F.2d 28, 30 (1st Cir.1990). In this case, we consider the evidence in the light most advantageous to Elliott and draw all reasonable inferences in his favor. Id. at 31. "We will reverse a grant of summary judgment if there are any factual issues that need to be resolved before the legal issues can be addressed." Id.
 
 I. EVIDENCE
 
 3
 On February 22, 1988, Guy assaulted his mother during an argument. He then threatened his father with a corn sickle and a chain saw. This episode of family violence was not the first for Guy, who had just turned 18. The juvenile justice system had previously detained Guy on a charge of assaulting his father. Moreover, Guy had a history of mental health problems. He was a diagnosed schizophrenic and was seeing a psychologist, Dr. Burt Hollenbeck. Against this background, Guy's family called the police. Defendant State Trooper Michael Ranhoff responded to the call. By the time he arrived at the Elliotts' home, Guy had disappeared. Trooper Ranhoff spoke with Guy's mother, who told him about the incident and about Guy's troubles, including his schizophrenia. She did not, however, mention that Guy had twice threatened suicide. After an unsuccessful search for Guy, Trooper Ranhoff departed. When notified by the Elliotts of Guy's return a few hours later, Trooper Ranhoff went back and arrested Guy, who had by this time calmed down, on a charge of assault.
 
 
 4
 Trooper Ranhoff took Guy to the Cheshire County House of Corrections for booking. They arrived at about 5:30 p.m. On intake duty was Angie Malloy, a corrections officer and a defendant in this case. Trooper Ranhoff did not inform Officer Malloy of Guy's mental illness. The intake form did not include questions on that topic and there was no procedure for the intake officer to seek, or the arresting officer to provide, such information.
 
 
 5
 Guy spent the first night in an observation cell. He seemed untroubled and his behavior that night did not arouse concern among the corrections staff. He was arraigned the next day. His family decided not to post bail, and as a consequence Guy remained in jail pending his hearing, which was scheduled for March 1. At some point during the week, Dr. Hollenbeck called the jail and spoke to a corrections officer about Guy. Early on the morning of February 29, 1988, Guy was found dead, hanging by a bedsheet from an overhead fire sprinkler.
 
 
 6
 Elliott alleges that Guy's actions during his week in detainment should have alerted the defendants to Guy's suicidal tendencies. Sworn affidavits by two of Guy's fellow detainees, Glen Hall and Timothy Deem, attest to the following events. Guy was extremely upset at not being allowed to call his parents on the telephone. He told Hall that he wanted to drown himself in the toilet. He asked Deem, who occupied the neighboring cell, what would happen if he ate soap or swallowed paper towels. He expressed concern that the drinking water was contaminated. He banged his head against the bars of his cell and tried to jam his head underneath a shelf, explaining to Deem that he was trying to snap his neck. Most notably, Guy told Deem that he wanted to end his life.
 
 
 7
 According to Hall and Deem, they reported each of these events--including Guy's explicit statement that he wanted to end his life--to Corrections Officer Angie Malloy and other officers, on at least two occasions. Hall and Deem also swear that on the night before Guy's death they suggested that Guy be placed in an observation cell, but that Officer Malloy told them there was no room.
 
 
 8
 Officer Malloy's affidavit and deposition are consistent with some of the allegations of Deem and Hall, but Malloy's version differs in some crucial aspects. Significantly, Malloy does not refer to being told by Deem and Hall that Guy had threatened to take his life. Nor does she mention that the two detainees suggested that Guy be placed in an observation cell. Finally, Malloy does not report that she knew of Guy's query about eating soap, whereas Deem's affidavit states that she not only knew but talked to Guy about it.
 
 
 9
 Malloy's statements do confirm that she knew of Guy's head-banging and his concern about the safety of the water. When informed by Deem and Hall of the head-banging, Malloy went directly to Guy and asked him what he was doing. He told her that he was "just kidding around." Malloy states that she accepted Guy's explanations because she knew that Deem and Hall were practical jokers and not to be taken seriously. Similarly Malloy attributed Guy's fear about the water to "riding" (story-telling, practical joking) by Deem and Hall. Nevertheless, she did inform her shift replacement, defendant Corrections Officer Arthur Whipple, about the incidents. The two officers checked Guy together at 11:00 on the night before he died; nothing appeared out of the ordinary. Subsequent routine checks throughout the night indicated that all was quiet and secure, until Guy's body was found at about 4:40 a.m.
 
 II. DISCUSSION
 A. The Individual Defendants
 
 10
 The district court determined that the named defendants were entitled to qualified immunity, and granted summary judgment on that ground. 750 F.Supp. 1146. Qualified immunity protects public officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); see also Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987); Burns v. Loranger, 907 F.2d 233, 235 (1st Cir.1990). "The relevant, fact specific question in qualified immunity cases is whether any official could have, in light of the preexisting law, reasonably believed that his action was lawful." Danese v. Asman, 875 F.2d 1239, 1242 (6th Cir.1989), cert. denied, --- U.S. ----, 110 S.Ct. 1473, 108 L.Ed.2d 610 (1990); see also Edwards v. Gilbert, 867 F.2d 1271, 1273 (11th Cir.1989); Cortes-Quinones v. Jimenez-Nettleship, 842 F.2d 556, 561 (1st Cir.), cert. denied, 488 U.S. 823, 109 S.Ct. 68, 102 L.Ed.2d 45 (1988).
 
 
 11
 It is clearly established (and was at the time of Guy's death) that "jail officials violate the due process rights of their detainees if they exhibit a deliberate indifference to the medical needs of the detainees that is tantamount to an intent to punish." Danese, 875 F.2d at 1243; see also City of Revere v. Massachusetts General Hospital, 463 U.S. 239, 244, 103 S.Ct. 2979, 2983, 77 L.Ed.2d 605 (1983) (applying deliberate indifference standard to pretrial detainees); Bell v. Wolfish, 441 U.S. 520, 545, 99 S.Ct. 1861, 1877, 60 L.Ed.2d 447 (1979) (holding that pretrial detainees are entitled to at least as much protection as convicted prisoners); Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976) (articulating the deliberate indifference standard).
 
 
 12
 Deliberate indifference is more than negligence. Torraco v. Maloney, 923 F.2d 231, 236 (1st Cir.1991).[2] In a suicide case, "[a] finding of deliberate indifference requires a strong likelihood, rather than a mere possibility, that self-infliction of harm will occur." Id. at 236. The conduct must encompass "acts or omissions so dangerous (in respect to health and safety) that a defendant's knowledge of a large risk can be inferred." Cortes-Quinones, 842 F.2d at 558 (quotation omitted). "When a supervisory official is placed on actual notice of a prisoner's need for physical protection or medical care, 'administrative negligence can rise to the level of deliberate indifference to or reckless disregard for that prisoner's safety.' " Layne v. Vinzant, 657 F.2d 468, 471 (1st Cir.1981) (quoting West v. Rowe, 448 F.Supp. 58, 60 (N.D.Ill.1978)).
 
 
 13
 The key to deliberate indifference in a prison suicide case is whether the defendants knew, or reasonably should have known, of the detainee's suicidal tendencies. Torraco, 923 F.2d at 235. As the Eleventh Circuit has stated:
 
 
 14
 In the absence of a previous threat of or an earlier attempt at suicide, we know of no federal court in the nation ... that has concluded that official conduct in failing to prevent a suicide constitutes deliberate indifference. See, e.g., Cabrales v. County of Los Angeles, 864 F.2d 1454 (9th Cir.1988) (denying defendants' motion for JNOV where jailers had rescued decedent from previous suicide attempt); Partridge v. Two Unknown Police Officers, 791 F.2d 1182 (5th Cir.1986) (plaintiff stated a valid claim where it was known that detainee-decedent had attempted suicide in previous confinement).
 
 
 15
 Edwards, 867 F.2d at 1274-75 (further citations omitted). See also Belcher v. Oliver, 898 F.2d 32, 35 (4th Cir.1990) (qualified immunity appropriate where officers had no reason to believe that prisoner would harm himself); Colburn v. Upper Darby Township, 838 F.2d 663, 669 (3d Cir.1988) ("[I]f such officials know or should know of the particular vulnerability to suicide of an inmate, then the Fourteenth Amendment imposes on them an obligation not to act with reckless indifference to that vulnerability."); Layne, 657 F.2d at 471 (requiring "actual notice" of the prisoner's need for protection). Accord Buffington v. Baltimore County, Maryland, 913 F.2d 113, 120 (4th Cir.1990); Williams v. Borough of West Chester, 891 F.2d 458, 465-66 (3d Cir.1989); Estate of Cartwright v. City of Concord, 856 F.2d 1437, 1438 (9th Cir.1988); Gagne v. City of Galveston, 805 F.2d 558, 559-60 (5th Cir.), cert. denied sub nom. Gagne v. Putnal, 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 764 (1986); State Bank of St. Charles v. Camic, 712 F.2d 1140, 1146 (7th Cir.), cert. denied, 464 U.S. 995, 104 S.Ct. 491, 78 L.Ed.2d 686 (1983).
 
 
 16
 Thus, there can be no deliberate indifference if the defendants are unaware that the detainee poses a risk of harm to himself. Moreover, the risk must be "large," Cortes-Quinones, 842 F.2d at 558, and "strong," Torraco, 923 F.2d at 236, in order for constitutional (as opposed to tort) liability to attach. See also Buffington, 913 F.2d at 119 (no liability if risk of suicide is speculative). We must therefore determine if Elliott has raised an issue as to whether the defendants were, or should have been, aware that Guy presented a significant risk of suicide.[3]
 
 1. Corrections Personnel
 
 17
 Elliott alleges that the individual corrections officials and officers named in the complaint were deliberately indifferent by failing to assess Guy's mental condition and prevent his suicide. The district court found, and with one exception we agree, that there was no evidence that the corrections personnel had actual notice of Guy's need for protection from himself.
 
 
 18
 That exception, however, is critical. The sworn affidavits of detainees Deem and Hall both state that they heard Guy say that he wanted to take his life. Both Deem and Hall also swear that they reported the suicide threat to corrections officers. Yet the statements of corrections officers make no mention of being told of Guy's suicide threat. This discrepancy creates an issue of fact as to whether Guy actually made such a threat and whether Deem and Hall reported it to the defendants in such a manner as to be taken seriously. That Officer Malloy knew something of Guy's self-destructive behavior (the head-banging) strengthens the inference that a suicide threat should have been taken seriously, despite Deem and Hall's reputation as practical jokers. There can be no doubt, in light of the standard for deliberate indifference, that this issue is material to the case. Assuming that Guy's suicide threat was actually made and reported, a further issue is presented as to whether the corrections personnel responded reasonably or with deliberate indifference. See Torraco, 923 F.2d at 236. Resolving these issues requires evaluation of the credibility of the witnesses, which can only be accomplished at trial. We find, therefore, that Elliott has presented sufficient evidence to withstand the motion for summary judgment on the part of the individually named corrections personnel.
 
 2. Trooper Ranhoff
 
 19
 Trooper Ranhoff's liability is premised on his failure to inform the booking officer of Guy's medical history. As the district court correctly noted, Trooper Ranhoff cannot be held liable in his official capacity; as a state officer, he was acting as an arm of the state, and the state is not a "person" under Sec. 1983. Will v. Michigan Dept. of State Police, 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989). As for the trooper's individual liability, summary judgment in his favor was appropriate. It is undisputed that Trooper Ranhoff did not know of Guy's previous suicide threats. Nor was there any reason to suspect from Guy's demeanor or actions that such a danger existed. Thus, there is no evidence on which a jury could find deliberate indifference on the part of Trooper Ranhoff.
 
 B. Cheshire County
 
 20
 Liability of the county is based on two theories: its failure to train corrections personnel in adequate screening techniques to identify potentially suicidal detainees, and the inadequate design, construction and maintenance of the House of Corrections. In order for municipal liability to attach under Sec. 1983 a plaintiff must show that a policy or custom caused the alleged constitutional deprivation. Monell v. New York City Dept. of Social Services, 436 U.S. 658, 690, 98 S.Ct. 2018, 2035, 56 L.Ed.2d 611 (1978). The plaintiff must show that the municipality made "a deliberate choice to follow a course of action ... made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." Pembaur v. Cincinnati, 475 U.S. 469, 483-84, 106 S.Ct. 1292, 1300, 89 L.Ed.2d 452 (1986). The asserted policy must have been "so well-settled and widespread that the policymaking officials of the municipality can be said to have either actual or constructive knowledge of it yet did nothing to end the practice." Bordanaro v. McLeod, 871 F.2d 1151, 1156 (1st Cir.), cert. denied sub nom. City of Everett v. Bordanaro, --- U.S. ----, 110 S.Ct. 75, 107 L.Ed.2d 42 (1989). A municipality cannot be held for respondeat superior or vicarious liability; the municipality itself must cause the violation. City of Canton, Ohio v. Harris, 489 U.S. 378, 385, 109 S.Ct. 1197, 1203, 103 L.Ed.2d 412 (1989); Santiago v. Fenton, 891 F.2d 373, 381 (1st Cir.1989).
 
 
 21
 We agree with the district court that the evidence is insufficient to create a triable issue of fact as to whether the county had a policy amounting to deliberate indifference to potential suicides among its inmate population, whether implemented by inadequately training its officers, or by maintaining an unsafe jail. See Buffington, 913 F.2d at 123; Burns, 907 F.2d at 239; Santiago, 891 F.2d at 381-82; Danese, 875 F.2d at 1245; Molton v. City of Cleveland, 839 F.2d 240, 246 (6th Cir.1988), cert. denied, 489 U.S. 1068, 109 S.Ct. 1345, 103 L.Ed.2d 814 (1990). Summary judgment for the county was appropriate.
 
 III. CONCLUSION
 
 22
 For the reasons stated above, we affirm summary judgment in favor of Cheshire County and Trooper Ranhoff. Whether the corrections personnel were on notice that Guy presented a real risk of suicide is a genuine issue of material fact that cannot be resolved at the summary judgment stage. We therefore vacate summary judgment as to those defendants, and remand to the district court for further proceedings.
 
 
 23
 Affirmed in part, vacated and remanded in part. Costs to prevailing parties.
 
 
 
 [1]
 Specifically, the complaint named Patrick McManus, Superintendent of the Cheshire County House of Corrections; Carl Baird, Corrections Supervisor; and Corrections Officers Angie Malloy, Robert Norton, Arthur Whipple, Richard Clapp, and John Thornton. The arresting officer was State Trooper Michael Ranhoff. All defendants are named in their official capacities and individually
 
 
 [2]
 Torraco involved a convicted prisoner; thus, the eighth amendment prohibition against cruel and unusual punishment governed. The fourteenth rather than eighth amendment provides the standard for pretrial detainees. City of Revere v. Massachusetts General Hospital, 463 U.S. 239, 244, 103 S.Ct. 2979, 2983, 77 L.Ed.2d 605 (1983). Nevertheless, as noted, the deliberate indifference test applies in both situations
 
 
 [3]
 The Danese court, in affirming summary judgment for the defendant police officers, stated that "[t]he story might be different if the police were certain that Danese would attempt suicide and just ignored it, or if Danese had told them he needed psychological help." 875 F.2d at 1244 (emphasis added). We feel that certainty is too high a standard. Qualified immunity should be denied if the officials were or should have been aware that the prisoner presented a substantial risk of suicide