Carleen BOWEN, Administratrix

v.

CITY OF MANCHESTER, et al.

Civ. No. 88–085–S.

United States District Court,
D. New Hampshire.

Aug. 16, 1991.

Andru H. Volinsky, Concord, NH, for plaintiff.

Michael B. O'Shaughnessy, Manchester, NH, for defendants.

*ORDER*

STAHL, District Judge.

This action arises from the suicide of John Paul Bowen in a holding cell at the Manchester, New Hampshire, police department headquarters in 1986. Plaintiff Carleen Bowen, administratrix of John Bowen's estate, claims that the City of Manchester, Police Chief Thomas King, and two Manchester police officers violated the decedent's constitutional rights by failing to take appropriate steps to prevent his suicide. This action is founded on 42 U.S.C. 1983; the court has jurisdiction pursuant to 28 U.S.C. 1343.

At issue is defendants' motion for summary judgment. Facts derived from numerous pleadings are summarized below.

At approximately 11:25 p.m. on July 24, 1986, Manchester police arrested John Paul Bowen after he allegedly completed a cocaine sale to undercover detectives. Defendants describe Bowen as follows:

> At the time of his arrest, Bowen stood 6 feet 7 inches tall. He had long shaggy brown hair, blue eyes and he claimed to weigh 180 lbs. He was twenty-six (26) years old. His personal property included a wallet, necklace, earring and Four Dollars and Six Cents ($4.06). He wore no shirt at the time and the booking officer noted one (1), eight (8) inch scar north of Bowen's belly button as well as two (2), one (1) inch scars to the left of the eight (8) inch scar which appeared to the booking officer to be caused by a knife. Two (2) tattoos on the left and right forearms of Bowen appeared to be a "reefer" skull and a "crawling" skull, respectively.

Police transported Bowen to headquarters for processing. Sergeant Wayne Richards interviewed Bowen. Richards asserts that Bowen "appeared worried" but that he was cooperative.

Bail was first set at $1,500. It was subsequently raised to $20,000 cash or corporate surety. When advised that the figure had been raised, Bowen became "upset and agitated." Bowen made calls to secure bail. Plaintiff asserts that one of the calls was made to a "female friend or loved one" who rejected his request for help. Apparently after completing that call, Bowen is reported to have said: "she's wicked, she told me I belong in here."

Police gave Bowen a shirt and took him to a holding cell. The two police officers responsible for the holding cell area Michael Disabato and Philip LeBlanc—were also driving the paddy wagon that night. It appears that there were no police on the premises for substantial periods of time although defendants assert that Bowen was "checked approximately fifteen (15) minutes to a half hour before he was found hanging."

At approximately 2:20 a.m., Officer Richard D'Auria brought a prisoner into the holding cell area. He found John Bowen hanging in his cell—one part of the shirt was tied to the bars of the holding cell, another part of the shirt was tied to Bowen's neck.

On March 3, 1988, Carleen Bowen brought this action. Defendants filed a motion for summary judgment on December 18, 1990, which this court held in abeyance pending a decision by the First Circuit Court of Appeals in a similar case. That decision—*Elliott v. Cheshire County*, 940 F.2d 7 (1st Cir.1991).

## DISCUSSION

Defendants move for summary judgment, arguing (1) that the individual defendants are entitled to qualified immunity from the claims asserted against them, and (2) that plaintiff has failed to adduce any evidence to support the claim that the City of Manchester had a custom or policy which resulted in a violation of any constitutional right guaranteed John Bowen. The Court addresses each argument in turn.

### 1. Qualified Immunity

The *Elliott* case defined the legal parameters of the qualified immunity doctrine as it applies in cases like this. Specifically, the *Elliott* panel stated:

> Qualified immunity protects public officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "The relevant, fact specific question in qualified immunity cases is whether any official could have, in light of the preexisting law, reasonably believed that his action was lawful."
>
> It is clearly established ... that "jail officials violate the due process rights of their detainees if they exhibit a deliberate indifference to the medical needs of the detainees that is tantamount to an intent to punish."

*Id.* at 10 (citations omitted). As explained in Elliott, at 8, "the key to deliberate indifference in a prison suicide case is whether the

defendants knew, or reasonably should have known, of the detainee's suicidal tendencies."

■ Plaintiff here argues that the police should have known that John Bowen was likely to attempt suicide because:

> he was extremely cooperative and willing to do anything to assist the police while at the same time he was observed as being very nervous; he was anxious as to the charges and the possible sentence; he was rejected by a female friend to whom he had requested assistance in obtaining bail; he expressed shame over what he had done when he was arrested; and his behavior changed suddenly and dramatically when he learned that his bail had been changed from $1500.00 to $20,000.00

Plaintiff's Objection to Motion for Summary Judgment, pp. 1–2. This court, while recognizing that experts could disagree, finds nothing in these actions that should have indicated to police that there was a "substantial risk," *see Elliott*, at 11 n. 3, that John Paul Bowen would commit suicide.

Plaintiff has presented testimony from an expert in suicide prevention matters who disagrees. That expert, Joseph Rowan, reviewed materials provided by plaintiff's counsel and concluded: (1) that operation of the Manchester Police Department was grossly deficient; (2) that the Department provided no training in the recognition of mental illness; (3) that the monitoring of John Paul Bowen was grossly inadequate; (4) that there was no written policy and there were no defined procedures for suicide recognition and management; (5) that the Department made no changes to address the problem even after a previous suicide; (6) that the Department failed to provide adequate closed-circuit television and audio monitoring to directly observe inmate behavior; and (7) that police officers "failed totally to recognize signs and symptoms of potential suicide in John P. Bowen." September 26, 1989 letter from Joseph Rowan, Executive Director of the Juvenile and Criminal Justice Interna-

tional, to plaintiff's counsel (exhibit 5 submitted with plaintiff's opposition to defendants' motion for summary judgment). This report is attached hereto as Appendix A.*

Mr. Rowan provides impressive support for the argument that the Manchester Police Department neglected to prepare adequately for the possibility of John Paul Bowen's suicide. The problem with this argument, however, is that plaintiff must show that these defendants were more than just negligent. As *Elliott* makes abundantly clear, for plaintiff to make out a claim of constitutional dimension, she must show that these defendants were deliberately indifferent to the "substantial risk" that John Paul Bowen would commit suicide. Under the circumstances presented here, plaintiff cannot make that showing.

As an initial matter, it must be noted that "[i]n the absence of a previous threat of or an earlier attempt at suicide, we know of no federal court in the nation ... that has concluded that official conduct in failing to prevent a suicide constitutes deliberate indifference." *Elliott*, at 10 (quoting *Edwards v. Gilbert*, 867 F.2d 1271, 1275 (11th Cir.1989)). The cases this court has reviewed similarly fail to equate the failure to prevent a suicide with deliberate indifference absent (a) some clear indication to jail or prison personnel that the decedent was likely to harm himself, *see e.g., Elliott, supra; Torraco v. Maloney*, 923 F.2d 231 (1st Cir.1991); *Popham v. City of Talladega*, 908 F.2d 1561 (11th Cir.1990); *Danese v. Asman*, 875 F.2d 1239 (6th Cir. 1989); *Edwards v. Gilbert*, 867 F.2d 1271 (11th Cir.1989); *Freedman v. City of Allentown Pa.*, 853 F.2d 1111 (3rd Cir.1988); *Partridge v. Two Unknown Police Officers of Houston*, 791 F.2d 1182 (5th Cir.1986), or (b) allegations that police severely abused the decedent, *see e.g., Strandell v. Jackson County, Ill.*, 634 F.Supp. 824 (S.D.Ill.1986); *Holland v. Breen*, 623 F.Supp. 284 (D.Mass. 1985).[1] Nothing in the record presented to

---

\* [Editor's Note: Appendix deleted for purposes of publication.]

1. Some of the suicide cases cited above occurred during pretrial detention, while others took place in prison following conviction. Although two different constitutional provisions apply to these two different settings—the Eighth Amendment "is specifically concerned with the unnecessary and wanton infliction of pain in penal institutions," *Whitley v. Albers*, 475 U.S. 312, 327, 106 S.Ct. 1078, 1088, 89 L.Ed.2d 251 (1986); the Due Process clauses (Fifth and Fourteenth

this court suggests that there were clear indications that John Paul Bowen was likely to injure himself at the time of his arrest and detention. Neither does plaintiff assert, and again nothing in the record suggests, that police so abused the decedent that they thereby violated constitutional due process.

Plaintiff's reliance on *Lightbody v. Town of Hampton*, 618 F.Supp. 6 (D.N.H.1984) is misplaced. Without question, the *Lightbody* case reached the result plaintiff seeks. It held that the estate of a pretrial detainee could maintain a 1983 claim following the detainee's suicide under circumstances very much like those presented here. But the logic of *Lightbody* cannot be reconciled with the First Circuit's recent decision in *Elliott*. To the extent, then, that *Lightbody* would allow this plaintiff to state a 1983 claim on a showing of negligence, it has been overruled by *Elliott*.

■ To buttress his claim, plaintiff's expert—Joseph Rowan also provides conclusions about the ultimate issues in dispute. For example, Mr. Rowan states: "The aforementioned gross deficiencies in the operation of the [Manchester Police Department], involving a pattern of gross negligence and calloused [sic] disregard for the life-safety of prisoners, constitute deliberate indifference and were the proximate cause of Mr. Bowen's tragic death." While expert opinions plainly have some evidentiary value, summary judgment cannot be defeated by an expert's conclusory assertion about ultimate legal issues. As stated by Judge Timber in *State Farm Fire and Cas. Co. v. Miles*, 730

F.Supp. 1462, 1473 (S.D.Ind.1990), *aff'd without opinion*, 930 F.2d 25 (7th Cir.1991):

> If summary judgment can be avoided simply by presenting the unsupported opinion of an expert witness, it would be virtually impossible for a court to grant summary judgment as long as the nonmoving party could locate a sole expert who was willing to create a genuine issue of material fact for a price.

*See also Federal Power Com v. Hope Natural Gas Co.*, 320 U.S. 591, 627, 64 S.Ct. 281, 299, 88 L.Ed. 333 (1944) (Frankfurter, J. dissenting) ("It will not do to say that it must all be left to the skill of experts."); *Mid–State Fertilizer v. Exchange Nat. Bank*, 877 F.2d 1333, 1338 (7th Cir.1989) ("An expert who supplies nothing but a bottom line supplies nothing of value to the judicial process."); *Story v. Latto*, 702 F.Supp. 708, 709 (N.D.Ill.1989) (bald conclusion of expert cannot alone avoid summary judgment). Joseph Rowan provided more than conclusory allegations and bald conclusions in his letter to plaintiff's counsel and his deposition. Nonetheless, in this court's view, the nonconclusory statements he presents only support theories based on negligence, not constitutional theories predicated on deliberate indifference.[2]

Accordingly, without some evidence that these defendants were deliberately indifferent to a significant risk that John Paul Bowen would commit suicide, plaintiff has failed to show that defendants Michael Desabato and John Doe violated any clearly established constitutional right. Defendants Desabato and Doe are therefore entitled to qualified immunity from this action.

---

Amendments) protect pretrial detainees, *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); *Colburn v. Upper Darby TP.*, 838 F.2d 663, 668 (3rd Cir.1988)—the same deliberate indifference standard applies to both. *Colburn*, at 668 (and cases cited); *Carapellucci v. Town of Winchester*, 707 F.Supp. 611, 614 (D.Mass.1989).

2. There is some dispute about whether the constitutional standard is met by a showing of something slightly less than deliberate indifference. The United States Supreme Court has not resolved the issue. *See Daniels v. Williams*, 474 U.S. 327, 334 n. 3, 106 S.Ct. 662, 666 n. 3, 88 L.Ed.2d 662 (1986) ("Despite his claim about what he might have pleaded, petitioner concedes

that respondent was at most negligent. Accordingly, this case affords us no occasion to consider whether something less than intentional conduct, such as recklessness or 'gross negligence,' is enough to trigger the protections of the Due Process Clause.").

In this judicial circuit, such a claim "requires, at very least, proof of gross negligence." *Voutour v. Vitale*, 761 F.2d 812, 820 (1st Cir.1985). In this case, however, the Court finds that plaintiff has failed to make out a case of anything more than mere negligence. Even if gross negligence could support a 1983 claim under similar circumstances, the Court finds no evidence of "gross negligence" in the record presented.

## 2. Municipal Liability

Defendants also argue that plaintiff's claims against the City of Manchester and Police Chief Thomas King cannot be sustained. The Court agrees.

### a. City of Manchester

■ A municipality can be found liable under 1983 only where the municipality *itself* causes the constitutional violation at issue. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The inadequacy of police training may serve as the basis for such liability only where the failure to train "amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Canton v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197, 1205, 103 L.Ed.2d 412 (1989). In other words,

> where municipal policymakers are confronted with an obvious need to train city personnel to avoid the violation of constitutional rights and they are deliberately indifferent to that need, the lack of necessary training may be appropriately considered a city "policy" subjecting the city itself to liability under our decision in *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

*Canton, supra,* at 393, 109 S.Ct. at 1207 (O'Connor, J. concurring in part and dissenting in part).

■ Plaintiff argues that the City should be held liable here because (a) the City adopted a policy of *not* training police personnel in suicide detection and prevention, and (b) despite the custodial suicide of Roger Parent in 1983, the City "did not change the cell doors, the system of video surveillance, or the system of audio surveillance."

As an initial matter, the Court notes that there is some authority suggesting the City cannot be liable for constitutionally deficient training unless the actions of individual officers are found unreasonable. *Burns v. Loranger*, 907 F.2d 233, 239 (1st Cir.1990).[3] Since the Court concludes that the officers' actions were objectively reasonable, *Burns* indicates that the City cannot be held liable for constitutionally inadequate training.

In addition, the Court finds no merit to plaintiff's claim that the City can be held liable under 1983 for its failure to maintain essential equipment to adequately detect, supervise and monitor suicidal prisoners. Plaintiff's position contradicts a great number of recently decided cases.

Most notably, plaintiff's argument is precluded by the recent *Elliott* decision, wherein a panel of the First Circuit Court of Appeals found no "triable issue of fact as to whether the county had a policy amounting to deliberate indifference to potential suicides among its inmate population, whether implemented by inadequately training its officers, or by maintaining an unsafe jail." Id. at 12. In *Elliott*, the decedent (Guy Elliott) was schizophrenic. Guy Elliott's mother told the arresting officer of Guy's mental illness at the time of arrest, but the officer did not pass that information on to the jail. "The intake form did not include questions on that topic and there was no procedure for the intake officer to seek, or the arresting officer to provide, such information." Id. at 9. There is simply no suggestion that Cheshire County did anything to guard against the possibility of a suicide in its jail. Nonetheless, the court of appeals affirmed summary judgment in favor of the county.

Plaintiff argues that this case is distinguishable from *Elliott* because plaintiff here "has adduced specific proof that the Defen-

**3.** In the *Burns* case, the court first found individual officers entitled to qualified immunity from 1983 claims arising from an allegedly unconstitutional arrest. Then, turning to the claims against the municipality, the First Circuit panel stated:

> The section 1983 claim against the City of Saco was properly dismissed on the merits. The conduct of the defendant officers was objectively reasonable. Thus, there could have been no causal connection between any defi-

cient city policy, relating to the strip-searching of criminal suspects, and the alleged deprivation of plaintiff's fourth amendment rights. *See Kibbe v. City of Springfield*, 777 F.2d 801, 809–10 (1st Cir.1985) (city's failure to train must be proximate cause of alleged harm), *cert. granted*, 475 U.S. 1064, 106 S.Ct. 1374, 89 L.Ed.2d 600 (1986), *cert. dismissed*, 480 U.S. 257, 107 S.Ct. 1114, 94 L.Ed.2d 293 (1987). Id. at 239.

dant City affirmatively decided not to modify or improve its physical facility or monitoring system," despite the fact that a previous suicide had occurred in the same facility under nearly identical circumstances in 1983. Even if such an argument survives *Elliott,* and this Court is not certain that it does, the proof adduced does not suggest a disputed issue of material fact relevant to the issue of "deliberate indifference."

It may be that plaintiff could persuade a jury that the City's failure to take preventative action after Roger Parent's 1983 custodial suicide was negligence. But the Court finds no evidence in this record to support plaintiff's contention that the City exhibited deliberate indifference to inmates' constitutional rights.

Plaintiff argues that this case is very much like *Colburn v. Upper Darby Twp.,* 838 F.2d 663 (3rd Cir.1988), *cert. denied,* 489 U.S. 1065, 109 S.Ct. 1338, 103 L.Ed.2d 808 (1989) and *Partridge v. Two Unknown Police Officers,* 791 F.2d 1182 (5th Cir.1986), two cases arising from custodial suicides in which the plaintiffs survived motions to dismiss. The Court respectfully disagrees.

Firstly, and most obviously, this Court has before it motions for summary judgment. The fact that the plaintiffs in *Colburn* and *Partridge* set forth claims upon which relief could be granted does not require this Court to find genuine issues of material fact allowing this plaintiff's case to go before a jury. The difference between standards of pleading and standards of proof are too fundamental to require further discussion.

Secondly, the facts in both *Colburn* and *Partridge* plainly suggested that police completely ignored obvious signs that the inmate was likely to commit suicide. In *Colburn,* it was shown:

(1) that the Upper Darby police were familiar with [Melinda Lee] Stierheim [the decedent] from previous encounters as a result of her relationship with members of the "Warlocks" motorcycle gang; (2) that on the day before her suicide the Upper Darby police had been called to Stierheim's apartment after Stierheim had jumped from the window following an argument with her boyfriend; (3) that Stier-

heim was extremely depressed for personal reasons; (4) that Stierheim had obvious scars on her right wrist from a previous suicide attempt; (5) that the detaining officer had to prevent Stierheim from swallowing three Valium pills she had removed from her purse; (6) that Stierheim was detained by the police "for her own protection"; and (7) that Miller [an Upper Darby police officer] found a live round of ammunition in Stierheim's pocket.

*Colburn* at 670. In spite of these circumstances, police failed to discover a handgun which Stierheim later used to shoot herself. Moreover, Melinda Lee Stierheim was the third person in three years to commit suicide while in Upper Darby police custody. The *Colburn* court therefore concluded that plaintiffs were entitled to conduct discovery to develop facts in support of their claims.

Similarly, in *Partridge,* police arrested the decedent on suspicion of burglary and theft. While being questioned, the decedent became hysterical. His father told police that the decedent had suffered a nervous breakdown. Police forced the decedent into the car; he became agitated and attempted to kick the doors and windows out of the car; a back-up unit was called for assistance. While travelling to the jail, the decedent intentionally struck his head against the plexiglass divider between the front and back seats. Records maintained at the jail indicated that the decedent had attempted suicide during an earlier confinement. The individual officers who processed the decedent after his arrest were unaware of that incident. Three hours after being brought to the jail, the decedent hanged himself with a pair of socks tied around the upper bars of his cell.

Because the facts in *Colburn* and *Partridge* are so clearly distinguishable from those presented in this case, the Court finds plaintiff's reliance on them misplaced.

### b. Chief King

Like the individual officers and the City of Manchester, Police Chief Thomas King can only be found liable under 1983 for the death of John Paul Bowen if King was deliberately indifferent to a situation at the jail which

caused Bowen's suicide. For the reasons discussed in subsection a above, the Court finds no such deliberate indifference under the facts presented in this case and accordingly Chief King is also entitled to summary judgment on the 1983 claims asserted against him.

*3. Conclusion*

Summary judgment, an "integral part of the Federal Rules as a whole," *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986), is proper if there is no "genuine issue of material fact" in the pleadings or in matters "outside" the pleadings such as "depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any." Rule 56(c), Fed.R. civ. P.

As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "The question is not whether there is literally *no* evidence favoring the non-movant, but whether there is any upon which a jury could properly proceed to find a verdict in that party's favor." *De Arteaga v. Pall Ultrafine Filtration Corp.,* 862 F.2d 940, 941 (1st Cir.1988). Viewing the evidence in the light most favorable to the plaintiff and indulging all inferences favorable to her, *Caputo v. Boston Edison Co.,* 924 F.2d 11, 13 (1st Cir.1991), this Court finds no genuine issue of material fact requiring trial of the 1983 claims asserted against any of the defendants. The Court also finds that the defendants are entitled to judgment as a matter of law on those claims.

Accordingly, defendants' motion for summary judgment (document no. 45) is granted to the extent that it seeks judgment on the 1983 claims. Without those claims, this court is without subject matter jurisdiction to adjudicate the pendent state law issues raised in plaintiff's complaint. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966) ("[I]f the federal claims are dismissed before trial ..., the state claims should be dismissed as well"). *Accord Gilbert v. City of Cambridge,* 932 F.2d 51, 67 (1st Cir.1991); *Brennan v. Hendrigan,* 888 F.2d 189, 196 (1st Cir.1989). The pendent claims are therefore dismissed. The Court does not reach defendants' pending motions *in limine.*

SO ORDERED.