**Gail W. TRASK, Individually and as
Administratrix of the Estate of
Daniel G. Trask**

v.

**COUNTY OF STRAFFORD, et al.**

Civ. No. 89–083–S.

United States District Court,
D. New Hampshire.

Aug. 22, 1991.

Leslie H. Johnson, Concord, N.H., for plaintiff.

Bartram C. Branch, Manchester, N.H., for defendants.

## ORDER

STAHL, District Judge.

Gail W. Trask brings this civil rights action against the County of Strafford, New Hampshire, three Strafford County Commissioners, and the Superintendent of the Strafford County Jail for their failure to prevent Daniel from committing suicide while he was incarcerated in 1986. The individual defendants have been sued only in their official capacities. Plaintiff asserts this action under authority of 42 U.S.C. § 1983 and the doctrine of pendent jurisdiction. Subject matter jurisdiction is founded on 28 U.S.C. § 1343.

Defendants move for summary judgment arguing: (1) plaintiff cannot show that any alleged failure on the part of correctional officers to comply with jail policies or any deficiencies in these policies amounted to the deliberate indifference prohibited by the Constitution; (2) the doctrine of *respondeat superior* cannot be invoked to hold any of these defendants liable under § 1983; and (3) § 1983 does not provide a remedy for violations of the New Hampshire Constitution. Defendants' motion for summary judgment is uncontested.

## I. Background [1]

On February 17, 1986, Daniel Trask ("Trask") went to a friend's apartment. An argument broke out. Trask lit an article of his friend's clothing on fire, ultimate-

---

1. The facts summarized below are derived primarily from the complaint and plaintiff's pre- trial statement.

ly causing the apartment building to ignite. He later confessed to the crime and surrendered to the police.

Trask was unable to secure bail and was consequently held at the Strafford County Jail. Trask's initial intake interview was conducted by an Officer Golden who completed an inmate record and medical screening form.

Trask remained in the low maximum security area until after a medical examination was conducted. He was thereafter classified to "B–Pod", a medium security area. B–Pod is arranged so that the entire pod is visible from a glass-enclosed center. The only area not observable from the center-point is the shower area. Jail policies require the shower area to be closed each day by 4:30 p.m. And jail policies require correctional officers to check on the inmates every half-hour.

On February 19, 1986, Trask phoned his mother and "talked about suicide." Plaintiff's Pretrial Statement, at 3. Trask's mother believed "he was not serious and that there was no risk." *Id.*

On February 20, 1986, Trask spoke to his attorney, Robert C. Wunder. Wunder observed that Trask was "significantly depressed." *Id.,* at 3. On February 20, 1986, Officer Richard Rochette observed Trask between 4:00 p.m. and 4:30 p.m. At approximately 4:45 p.m., inmates found Trask hanging in the shower stall from a bed sheet tied to the sprinkler. Trask was pronounced dead at 8:10 p.m.

Plaintiff initiated this § 1983 civil rights claim on February 22, 1989, alleging that defendants' failure to take preventative action caused decedent's suicide.[2]

## II. Discussion

Defendants claim that summary judgment is appropriate because plaintiff has not met her burden of showing that defendants were deliberately indifferent to the possibility that Daniel Trask would take his life. Although plaintiff has not opposed defendants' motion for summary judgment, the complaint makes clear plaintiff's theory. In the complaint, plaintiff alleges that the Strafford County Department of Corrections failed to adequately train corrections officers. In addition, plaintiff asserts that among the other causes of Daniel Trask's death were the defendants' failures to:

> [recognize that] pre-trial detainees are a high suicide risk and take care to properly screen Daniel and discover he was a possible suicide victim and for failing to monitor a change in his behavior and mannerisms, failure to implement and follow proper jail procedures, failure to place him in the proper security level of the jail, failure to notice his sheet was missing from his room or see him take the sheet into the shower room, failing to properly monitor his activities at all times even when in plain view of the guard booth, failure to have video cameras in strategic locations for visual surveillance, failure to make rounds of the cells, allowing free movement of prisoners, allowing him to shower when the shower was closed and in providing him with shoe laces the instrument by which he hung himself.

Complaint, at ¶ 21.

▮ As an initial matter, the court notes that allegations of negligent conduct are not sufficient to support a claim of constitutional magnitude. It is beyond dispute that claims of negligence do not satisfy the standards required of a constitutional cause of action. *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662

---

**2.** Plaintiff originally pursued her claims against nine defendants: (1) Strafford County, (2) George Maglaras, in his official capacity as chairman of the Strafford County Commissioners, (3) Paul Dumont, in his official capacity as vice chairman of the Strafford County Commissioners, (4) Roland Roberge, in his official capacity as clerk of the Strafford County Commissioners, (5) Richard Cavanaugh, in his official capacity as Sheriff of the Strafford County Sheriff's Department, (6) Nelson Goodfield of the Strafford County Jail, (7) Kenneth Hussey, in his official capacity as chief of the Rochester, New Hampshire Police Department, (8) the City of Rochester, and (9) unnamed police officers of the City of Rochester. On December 15, 1989, plaintiff stipulated to the dismissal of her claims against defendants Cavanaugh, the City of Rochester, Hussey, and the unnamed Rochester police officers.

(1986); *Torraco v. Maloney*, 923 F.2d 231, 234 (1st Cir.1991). Thus, by themselves, plaintiff's claims that these defendants breached duties of due care owed Daniel Trask cannot support a § 1983 claim.

■ It is also now established that, to prevail in a custodial suicide case brought pursuant to § 1983, plaintiff must show that jail officials displayed "deliberate indifference" to the substantial risk of an inmate's suicide. *Torraco v. Maloney, supra; Popham v. City of Talladega*, 908 F.2d 1561 (11th Cir.1990). As the First Circuit Court of Appeals has previously explained:

> when prison officials intentionally place prisoners in dangerous surroundings, when they intentionally ignore prisoners' serious medical needs, or when they are "deliberately indifferent" either to prisoners' health or safety, they violate the Constitution. Different courts have described "deliberate indifference" in various ways, but, at least, that term encompasses acts or omissions so dangerous (in respect to health or safety) that a defendant's "knowledge of [a large] ... risk can be inferred."

*Cortes–Quinones v. Jimenez–Nettleship*, 842 F.2d 556, 558 (1st Cir.1988), *cert. denied*, 488 U.S. 823, 109 S.Ct. 68, 102 L.Ed.2d 45 (1988).

In *Elliott v. Cheshire County*, 940 F.2d 7 (1991), the First Circuit Court of Appeals stressed that the key to deliberate indifference in a prison suicide case is whether the defendants knew, or reasonably should have known, of the detainee's suicidal tendencies. And the *Elliott* court noted the difficulty of proving deliberate indifference in this context:

> In the absence of a previous threat of or an earlier attempt at suicide, we know of no federal court in the nation or any other court within this circuit that has concluded that official conduct in failing to prevent a suicide constitutes deliberate indifference. See e.g. *Cabrales v. County of Los Angeles*, 864 F.2d 1454

(9th Cir.1988) (denying defendants' motion for JNOV where jailers had rescued decedent from previous suicide attempt); *Partridge v. Two Unknown Police Officers*, 791 F.2d 1182 (5th Cir.1986) (plaintiff stated a valid claim where it was known that detainee-decedent had attempted suicide in previous confinement)

*Elliott*, at 11 (quoting *Edwards v. Gilbert*, 867 F.2d 1271, 1274–75 (11th Cir.1989)).

■ The record contains no evidence that Superintendent Nelson or his officers knew of a previous threat or attempt at suicide by the decedent. To the contrary, at the time of his incarceration, the decedent was interviewed by a classification specialist who perceived no signs that Daniel Trask would injure himself. Plaintiff alleges that this specialist contravened county policy when he failed to contact a doctor or nurse after learning of Trask's dependency on alcohol. That allegation would only support a negligence claim, however. It does not amount to the deliberate indifference that would require a remedy under § 1983.

Moreover, Trask did not tell his attorney of any plan to take his own life. And the only person Trask confided in, his mother, felt he did not seriously intend to commit suicide.

A careful review of the record reveals no evidence that would support anything other than a negligence claim against these defendants. If these defendants failed to follow rules concerning classification, supervision of inmates, or the availability of shower facilities, plaintiff may be able to show that they were negligent in performing their duties. But the Court is not persuaded that any such failure gives rise to a constitutional cause of action.

Similarly, plaintiff's allegations that jail officers were not adequately trained to identify suicide risks and that the jail was inadequately designed to prevent such risks must be rejected in light of the recent decision in *Elliott v. Cheshire County, supra*, at 12.[3]

---

**3.** The *Elliott* court stated:

> We agree with the district court that the evidence is insufficient to create a triable issue

■ Moreover, the legal standards for holding these defendants liable under § 1983 are clear. These defendants—Strafford County, Strafford County commissioners sued in their official capacities, and Jail Superintendent Goodfield sued in his official capacity—can only be held liable under § 1983 where they have caused the constitutional violation at issue. *Respondeat superior* or vicarious liability will not attach under § 1983. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197, 1202–03, 103 L.Ed.2d 412 (1989). To prevail against a municipality or municipal officials under § 1983, a plaintiff must show that a policy or custom of the municipality led to the constitutional deprivation alleged. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). "This requires that plaintiff demonstrate both the existence of a policy or custom and a causal link between that policy and the constitutional harm." *Santiago v. Fenton*, 891 F.2d 373, 381 (1st Cir.1989). Because the Court finds no constitutional harm under the facts of this case, there can be no finding of an unconstitutional policy or custom.

### III.  Conclusion

Summary judgment, an "integral part of the Federal Rules as a whole," *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986), is proper if there is no "genuine issue of material fact" in the pleadings or in matters "outside" the pleadings such as "depositions, answers to interrogatories, and admissions on file, together with affidavits, if any." Rule 56(c), Fed.R.Civ.P.

As to materiality, the substantive law will identify which facts are material. Only disputes over the facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual

disputes that are irrelevant or unnecessary will not be counted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "The questions is not whether there is literally *no* evidence favoring the non-movant, but whether there is any upon which a jury could properly proceed to find a verdict in that party's favor." *De Arteaga v. Pall Ultrafine Filtration Corp.*, 862 F.2d 940, 941 (1st Cir.1988). Viewing the evidence in the light most favorable to the plaintiff and indulging all inferences favorable to her, *Caputo v. Boston Edison Co.*, 924 F.2d 11, 13 (1st Cir.1991), this Court finds no genuine issue of material fact requiring trial of the § 1983 claims asserted against any of the defendants. The Court also finds that the defendants are entitled to judgment as a matter of law on those claims.

Accordingly, defendant's motion for summary judgment (document no. 23) is granted to the extent that it seeks judgment on the § 1983 claims. Without those claims, this Court is without subject matter jurisdiction to adjudicate the pendent state law issues raised in plaintiff's complaint. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966) ("[I]f the federal claims are dismissed before trial ..., the state claims should be dismissed as well"). *Accord Gilbert v. City of Cambridge*, 932 F.2d 51, 67 (1st Cir.1991); *Brennan v. Hendrigan*, 888 F.2d 189, 196 (1st Cir.1989). The pendent claims are therefore dismissed. The Court does not reach the parties' pending motions *in limine.*

SO ORDERED.

---

of fact as to whether the county had a policy amounting to deliberate indifference to potential suicides among its inmate population, whether implemented by inadequately training its officers, or by maintaining an unsafe jail.

*Elliott* does not explain what evidence would be sufficient to create such a triable issue. This court finds no substantial difference between the facts adduced here and the relevant facts detailed in *Elliott.*