David McNALLY, Plaintiff,

v.

PRISON HEALTH SERVICES, INC., et al., Defendants.

No. CIV. 98–290–P–C.

United States District Court, D. Maine.

Dec. 8, 1998.

Stuart W. Tisdale, Jr., Mary A. Davis, Tisdale & Davis, Portland, ME, for Plaintiff.

James E. Fortin, Douglas, Denham, Rogers & Hood, Portland, ME, for Defendants.

## MEMORANDUM OF DECISION AND ORDER

CARTER, District Judge.

Now before the Court is Prison Health Services, Inc. (PHS)'s Motion to Dismiss Count I of David McNally's Complaint. Count I of the Complaint alleges that PHS exhibited deliberate indifference to McNally's serious medical needs, and, in so doing, deprived him of his constitutional rights, thereby violating 42 U.S.C. § 1983. In Count II, McNally alleges that PHS discriminated against him on the basis of his disability in violation of the Americans with Disabilities Act of 1990(ADA), 42 U.S.C.A. §§ 12131, 12132.[1]

### I. Background

On a motion to dismiss, the court must take all of a plaintiff's factual averments as true and indulge in every reasonable inference in his or her favor. The facts as alleged in McNally's Complaint are as follows. In early November of 1997, McNally was taken into custody by a law enforcement officer and was transported to Cumberland County Jail. Complaint (Docket No. 1) ¶ 5. During the arrest, McNally was injured by the arresting officers and suffered blackened eyes and a cut on his nose. Complaint ¶ 6. The police took McNally to Maine Medical Center for sutures before continuing on to the Cumberland County Jail. Id.

Later that night, the police brought McNally to the Cumberland County Jail. Id. ¶ 7. During the booking process, McNally told employees of PHS that he had been diagnosed with Human Immuno-deficiency Virus ("HIV") and was on a strict regime of medication. Id. He identified the medication and dosage and stated that he had missed a dosage because of his arrest and needed to take his dosage at that time. Id. Although McNally's physician confirmed his medication and dosage, id., PHS denied McNally's request for his medication. Id. ¶ 8.

McNally was incarcerated in Cumberland County Jail for approximately three days before he was released on bail. Id. ¶ 10. Throughout this time, he suffered "terrible fevers, night chills and night sweats, infections from the cuts and bruises inflicted by the arresting officers, and psychological stress over being forced to endure a potentially fatal deprivation of prescribed medication." Id. ¶ 10. Upon his release from jail, McNally returned to Maine Medical Center where he was hospitalized for several days as a result of being deprived of his necessary medication. Id. ¶ 11.

### II. Analysis

A motion to dismiss tests the legal sufficiency of the complaint. Carey v. Mt. Desert Island Hospital, 910 F.Supp. 7, 9 (D.Me. 1995). The plaintiff must set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory. Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir.1988). A Rule 12(b)(6) motion then requires the court to take all of the plaintiff's factual inferences as true and indulge every reasonable inference in the plaintiff's favor. Correa–Martinez v. Arrillaga–Belendez, 903 F.2d 49, 51 (1st Cir.1990). A motion to dismiss will be granted only if, when viewed in this manner, the pleading

---

1. Originally, PHS filed a motion to dismiss Counts I and II. It argued that Count II should be dismissed for failure to state a claim because the ADA does not apply to prisons. However, the recent decision by the Supreme Court in *Pennsylvania Department of Corrections v. Yeskey*, 524 U.S. 206, 118 S.Ct. 1952, 141 L.Ed.2d 215 (1998), held that Title II of the ADA, prohibiting public entities from discriminating against qualified individuals with a disability on account of that individual's disability, applied to inmates in state prisons. Accordingly, PHS moved to withdraw its motion as it relates to Count II of the Complaint.

shows no set of facts which could entitle the plaintiff to relief. *Gooley,* 851 F.2d at 514.

Section 1983 creates a cause of action against those who, acting under the color of state law, violate federal law. Although McNally alleged violations of both the Eighth and Fourteenth Amendments to the U.S. Constitution in Count I of his Complaint, the Court agrees with the parties' current mutual position that McNally's claim is more properly analyzed under the Due Process Clause of the Fourteenth Amendment because McNally was a pretrial detainee when the alleged constitutional violation occurred. *See Revere v. Massachusetts General Hospital,* 463 U.S. 239, 244, 103 S.Ct. 2979, 2983, 77 L.Ed.2d 605 (1983); *Bell v. Wolfish,* 441 U.S. 520, 535, n. 16, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). The Supreme Court has not presented the precise formulation of the due process standard in denial of medical care. "It is clear, however, that the due process rights of a pretrial detainee are at least as great as the Eighth Amendment protections available to a convicted prisoner." *Revere,* 463 U.S. at 244, 103 S.Ct. at 2983; *see also Gaudreault v. Municipality of Salem Massachusetts,* 923 F.2d 203, 208 (1st Cir.1990) (holding that it is clear that "the boundaries of [the duty to provide medical care to pretrial detainees] extend at least as far as the protection that the Eight Amendment gives to a convicted prisoner."); *Jesionowski v. Beck,* 937 F.Supp. 95, 101 (D.Mass.1996) (citing cases).

The First Circuit analyzes section 1983 detainees' claims for Fourteenth Amendment violations under the "deliberate indifference" standard. *See Consolo v. George,* 58 F.3d 791, 794 (1st Cir.1995); *Elliott v. Cheshire County,* 940 F.2d 7, 9 (1st Cir.1991); *Jesionowski,* 937 F.Supp. at 102. Pursuant to this standard, "jail officials violate the due process rights of their detainees if they exhibit a deliberate indifference to the medical needs of the detainees that is tantamount to an intent to punish." *Elliott,* 940 F.2d at 10 (citing cases). PHS contends that McNally's Complaint fails to allege facts from which a fact finder could conclude that PHS acted with deliberate indifference to a serious medical need.

Deliberate indifference is more than negligence. *Id.* However, "when a supervisory official is placed on actual notice of a prisoner's need for ... medical care, 'administrative negligence can rise to the level of deliberate indifference to or reckless disregard for that prisoner's safety.'" *Id.* (citing *Layne v. Vinzant,* 657 F.2d 468, 471 (1st Cir.1981)) (quoting *West v. Rowe,* 448 F.Supp. 58, 60 (N.D.Ill.1978)). The First Circuit has written that "[i]n order to be found 'deliberately indifferent', prison officials must be shown to have been subjectively aware of a condition requiring intervention." *Jesionowski,* 937 F.Supp. at 102 (citing *Mahan v. Plymouth County House of Corrections,* 64 F.3d 14, 18 (1st Cir. 1995)). According to the Complaint, McNally told PHS that he needed to take medication for HIV and that he needed to be provided with his dosage immediately. Complaint ¶ 7. McNally's physician confirmed the HIV diagnosis, medication, and the dosage. *Id.* ¶ 9. Furthermore, McNally alleges that he suffered from physical symptoms including fevers, night chills, and night sweats when he was denied his medication. Complaint ¶ 10. Although it is not clearly stated in the Complaint that PHS was subjectively aware that McNally suffered from these symptoms or knew such symptoms would result from denying McNally his medication, this can be inferred from the facts stated in the Complaint and that McNally was in jail when the symptoms occurred. Hence, McNally's Complaint alleges sufficient facts from which one may infer that PHS had actual subjective notice that McNally needed medical care and yet refused to provide it. Complaint ¶ 13.

In applying the deliberate indifference standard, courts also consider such factors as "the severity of the medical problem, the potential for harm if medical care is denied or delayed and whether any such harm actually resulted from the lack of medical attention." *See Burns v. Head Jailor of LaSalle County Jail,* 576 F.Supp. 618, 620 (N.D.Ill. 1984). A "serious medical need is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Ma-*

*han,* 64 F.3d at 17–18. McNally has alleged in his complaint that his physician confirmed that he was on a medication protocol for the treatment of HIV. Complaint ¶ 9. McNally also describes HIV as a serious medical condition in his Complaint. Complaint ¶ 7. Consequently, McNally's Complaint sufficiently alleges a serious medical need.

In its Motion to Dismiss, PHS primarily argues that PHS's actions do not rise to deliberate indifference because they did not result in significant harm to McNally. Assuming significant harm is an element of this claim, this Court disagrees. A motion to dismiss may be granted only if the complaint shows no set of facts which could entitle a plaintiff to relief. *See Gooley,* 851 F.2d at 514. McNally has set forth sufficient factual allegations in his Complaint from which one may infer that he suffered significant harm. McNally states that throughout his incarceration in the Cumberland County Jail, he "was subject to terrible fevers, night chills and night sweats, infections from the cuts and bruises inflicted by the arresting officers, and psychological stress over being forced to endure a potentially fatal deprivation of prescribed medicine." Complaint ¶ 10. In addition, McNally alleges that he was hospitalized for several days after his release as a result of being deprived of his medication. *Id.* ¶ 11. These allegations are sufficiently serious to withstand a motion to dismiss. PHS contends that it is unclear from the Complaint that these problems were caused by PHS's actions. However, McNally states in his Complaint that his physical discomfort and resulting damages were caused by PHS's actions. Complaint ¶ 13. This, coupled with the fact that McNally experienced the physical injuries right after PHS denied him his medication, is sufficient to state the element of causation.

To conclude, McNally has alleged facts pertinent to his medical condition from which one may infer that his medical condition was serious and that PHS's deprivation of his medication resulted in significant harm. Because McNally has alleged that PHS had actual notice of his medical condition and his need for medical care, that his physician confirmed that he had HIV and was on a regimen of medication, and that he suffered harm as a result of PHS's refusal to administer his medication to him, McNally has set forth sufficient facts from which deliberate indifference may be inferred.

### III.  Conclusion

Accordingly, the Court **ORDERS** that PHS's Motion to Dismiss be, and it is hereby, **DENIED**.